THE PEOPLE ex rel. JAMES HOAG et al. v. DARIUS PECK, County Judge of Columbia County.

(GENERAL TERM, THIRD DEPARTMENT, NOVEMBER, 1871.)

The validity of an application to bond a municipal corporation for railroad purposes, under the act of 1869 (chap. 907, p. 2303), must be determined by the state of the law at the time it is made.

Such an application, made after the act of 1871 (chap. 925) had taken effect, which contains a condition that the railroad shall be made upon a certain route, is valid, although signed previously to that act, by the petitioners.

And, it seems, the amendatory act of 1870 (ch. 507) also provided for such a condition.

The statute governing the proceedings under these statutes does not require an actual location of the road, at the time they are begun.

It seems, the statutory provisions leave the tax-payers at liberty to bond their towns for construction of railroads not passing through their municipal limits, but where it should be made apparent that the investment was designed for speculative purposes foreign to the object of the statutes, the commissioners would be restrained.

The statutes contemplate that the railroad company shall be incorporated before the proceedings can be lawfully taken; but do not require the fact to be proved before the judge, or stated with especial particularity in the petition. The statement that the company in view is a railroad company in this State, is sufficient.

They reserve no authority to tax-payers for withdrawing their consent from the application. When once given according to the prescribed form, it becomes irrevocable when the proceedings are afterward instituted upon it.

The county judge may (by express provision of law) allow new parties to the application; but he may not allow an applicant to withdraw his name from the petition.

A town is not deprived of the power to invest its bonds in a railroad named in the petition by reason of the incorporation and partial construction, of any other railroad which is not constructed in such town, and not in operation within its limits, and not taxed or upon the assessment roll.

Whether a completed assessment roll, under the terms of the act of 1871, is the same with the completed roll, as the terms are used in the statute prescribing the authority and duties of the assessors in making the roll, where it does not appear that the taxes imposed by means of it have been paid, quere.

The People ex rel. Hoag v. Peck.

In proceedings under these statutes (Laws, 1869, &c.), the party endeavoring to maintain them must be able to show that the terms of the statute have been, in all essential particulars, complied with.

To conclude the person taxed as a subscriber to the petition, he must either subscribe the petition himself, or his name must be subscribed by some other person, by his direction and in his presence.

It will not be presumed that a signature made by request, by a third person was made in the presence of the party making the request.

It could not, without violence to ordinary experience, be presumed that, out of one hundred and sixty-three names, forty-one which were not written by the persons themselves were written in the presence of such persons.

And where the witness to signatures not written by the persons themselves, states as to some that they were made by request in the presence of such persons, and as to others simply that they were made by request, though his attention is directed to the distinction, the inference must be that the latter names were not signed in the presence of the persons themselves.

Joint owners or occupants, when taxed as a partnership, are within the terms of the act of 1871, "a tax-payer" only.

WRIT of certiorari to the county Judge of Columbia county.

*Gaul & Esselstyn* for the relators.

*Newkirk & Chase* for the respondents.

Present—MILLER, P. J., PARKER and DANIELS, JJ.

DANIELS, J. The proceedings brought into this court by the writ issued in this cause were instituted under chapter 907 of the Laws of 1869 (Vol. 2, Laws of 1869, 2303), and the acts amendatory thereof, for the purpose of bonding the town of Ancram, in Columbia county, to aid in the construction of a railroad through that town by the Rhinebeck and Connecticut Railroad Company. They were commenced by an application made to the county judge on the twenty-sixth day of June, in the year 1871, though the petitions presented for that purpose were mostly subscribed by the petitioners in the preceding months of January and December. But as the laws upon this subject were, in some respects, changed intermediate these two periods of time, the validity

of the proceedings must be determined by the state of the law as it existed when the application was made, for it was only by showing a compliance with the law as it then stood that the application to issue the bonds could be rendered successful. That was the law under which the county judge was then authorized to proceed, and it constituted the authority by which he was bound in the exercise of his functions. He could apply no other rule, for the preceding statutes so far as a change had been made in them by the law last enacted, were repealed, and for all present and future purposes out of existence. Under the law as it then stood the petitions presented were valid, although they contained the express condition that the railroad should "be made upon a route commencing at or near Rhinecliff, in the county of Dutchess, and running thence to Hog Bridge, and thence to and through the villages of Lower Red Hook and Jackson Corners, successively, in said county of Dutchess, and to and through the villages of Gallatinville and Ancram successively, in said county of Columbia, and connect with the Connecticut western railroad at the State line, for section 1 of chapter 925 of the Laws of 1871, which took effect on the twelfth day of May of that year, sanctioned just such a condition (vol. 2, Laws of 1871, 2116), and the condition would probably have been just as valid under chapter 507 of the Laws of 1870, if the act of 1871 did not apply to these proceedings, for by that act it was provided that the railroad company might enter into an agreement with the commissioners, which, among other things, should limit and define the place or places where, and the purposes for which the bonds, or their proceeds, should be applied or used. (Laws of 1870, 1148.) For the power to make such an agreement was manifestly conferred for the benefit of the tax-payers themselves; and they had the right, therefore, to insist upon it that it should be observed and made use of according to their direction by the commissioners who might be appointed in the proceedings. And the most practical mode of giving that direction was by

The People ex rel. Hoag v. Peck.

its insertion in the petition, so that it might become the basis of the authority of the commissioners, and operate as a restriction on that authority. These statutes distinguish the present case from that of the *People* v. *The Adirondack Railroad Co.*, relied upon by the counsel for the relators, in which it was held that the statute did not provide for a conditional petition, for they were enacted after the decision was made, which was reviewed in that case. And their object seems to have been, in part at least, to relieve the proceedings from the rule adopted by that decision.

There is nothing in either of the statutes governing these proceedings requiring that the railroad shall be actually located at the time, when they are commenced, in order to render them valid, or to justify the county judge in directing the bonds to be issued in aid of the company. Upon this subject both the statutes of 1869 and 1871 are substantially, if not literally the same. And all that they require in this respect is that the petition shall show that the petitioners desire that the municipal corporation in which they own property and are taxed shall create and issue its bonds to the amount named, and invest them, or their proceeds, in the stock or bonds of such railroad company in this State as may be named in the petition. (Laws of 1869, 2303–4; Laws of 1871, 2115–16.) The generality of these provisions of course does leave the tax-payers at liberty to bond their towns for the construction of railroads not passing through the territorial limits of the municipality in which they are taxed. But the dictates of their own interests would ordinarily prove to be a sufficient safeguard for the prevention of abuse in the exercise of the authority conferred. The case would be exceedingly rare, and the advantages very conspicuous to induce the tax-payers of the municipality to encumber and burden their property for the benefit of a railroad company whose road should not be expected to enter their territorial limits. The object of these statutes is to enable municipal corporations to aid in the construction of railroads which may be reasonably expected to promote the con-

venience and advance the interests of the persons residing or owning property within their respective limits, and not to buy and sell railroad stock for the profit expected to be derived from such an adventure. And where it should be apparent that the investment was merely designed for speculative purposes, the commissioners would undoubtedly be restrained from entering into it, because it would be wholly foreign to the objects which the statutes were designed to promote. In the present case no ground exists for suspecting any such abuse to be intended.

The statutes relating to these proceedings certainly contemplate that the railroad company shall be incorporated before they can be lawfully taken; but they contain nothing requiring that to be proved as a fact before the county judge, or to be stated with any special particularity in the petition. What they require is that it should be a railroad company within this State, and be named in the petition. (Laws of 1869, 2303, 2304; Laws of 1871, 2116.) And that was complied with in this case. It could not be a railroad company in this State unless it was incorporated under its laws; and the statement of what the statute requires the petition to contain is necessarily an averment that the company has been so incorporated.

These statutes have reserved no authority to the tax-payers, who may become dissatisfied after they have signed the petition, for withdrawing their consent from the application The consent, when once given, according to the form pre scribed by the law, becomes irrevocable, when the proceedings are afterward instituted upon it, as they were in the present instance. The county judge is given no power to allow any person to withdraw his name, though he may permit others to become parties to the proceedings. The latter has been expressly provided for, but no express or implied provision can be found allowing the former to be done. On the contrary, the spirit and policy of the law is opposed to it. The county judge properly, therefore, refused to permit any of the contestants to withdraw their names from the applica-

The People ex rel. Hoag *v.* Peck.

tion, upon the hearing. He was also right in holding that the town was not deprived of its power to invest its bonds, or their proceeds, in the railroad of the company named in the petition, by reason of the incorporation of the Poughkeepsie and Eastern railroad, and the partial construction of its road. For although that road was not assessed or taxed upon the assessment roll of the town, still, as it was not constructed in the town, and was not in operation within its limits, it did not prevent the town from aiding in the construction of the railroad mentioned in the petition. The road of the other company was only constructed to Stessing, a distance of seven miles from the town of Ancram; and the road not taxed or upon the assessment roll must be constructed and be in operation in or through the town, in order to deprive it, for that reason, of the power to aid in the construction of another railroad. Both statutes are the same in this respect. (Laws of 1869, 2309, § 10; Laws of 1871, 2118, § 10.)

Whether a completed assessment roll under the terms used in the act of 1871 is the same thing as the completed roll as those terms are used in the statutes prescribing the authority and duties of the assessors in making the roll, may well be doubted where it does not appear that the taxes imposed by means of it have afterward been paid. For by the act of 1871 the word " taxpayer " is made to mean a corporation, partnership or person assessed or taxed for property, which would ordinarily be deemed to contemplate a legal assessment or tax; or a corporation, partnership or person intended to be taxed, which shall have paid, or be liable to pay the tax imposed, (Laws of 1871, 2116–17). Under this provision of the statute where the person, corporation or partnership, has not been lawfully assessed or taxed, but merely intended to have been so, and the tax has not been paid and it could not be assumed to be paid without proof in order to sustain these proceedings, there is good reason for holding that the tax should be shown to have been lawfully imposed, and that would require a valid assessment roll. For the corporation, partnership or person intended to be taxed could not other

wise be liable to pay the tax within the terms used in the statute.

But it is not necessary to examine or discuss that proposition, because it is apparent from the return of the respondent that neither a majority of the persons or the property, upon the instrument used as an assessment roll for the town, united in support of the application made. This is a special statutory proceeding, not only in derogation of the mode sanctioned by the common-law, but beyond that not entirely consistent with the full protection and security of the rights of the minority in the enjoyment of their property. In favor of such proceedings nothing has been permitted to be intended by the common law, which has always regarded them as liable to an unfavorable contrast with the course sanctioned by its own well settled principles. For that reason, in actions, proceeding and tried according to the course of the common law, important presumptions and intendments are often made by way of sustaining the results which may be reached in their consummation. There the presumption is in favor of their regularity, and of the correctness of the judgments pronounced. And to sustain them, facts not proved will, under certain circumstances, be presumed to exist. (*Jencks* v. *Smith*, 1 Com., 90.) But in proceedings of the nature of those involved in this case, a different rule prevails. And by that rule, nothing can be presumed or intended in their favor, but the party endeavoring to maintain them must be able to show that the terms of the statute providing for them has been in all essential particulars complied with. If that cannot be done they are held to be invalid, and the rule in this respect has been applied to them in the recent cases decided by the courts in this State. (*People* v. *Adirondack Railroad Co.; Same* v. *Smith*, county judge of Ontario county ; *Same* v. *Hulbert*, not yet reported.)

Under this rule, and the construction given to the statute authorizing these proceedings, it is not enough to render a tax-payer a petitioner, that he requested some other person to subscribe his name to the petition, and it was placed there by

that authority. The power conferred has been held to be personal in its nature, and not capable of being delegated by a mere request or consent. To conclude the person taxed, he must either subscribe the petition himself, or that must be done by some other person by his direction and in his presence. One or the other is required to constitute it his act within the terms and contemplation of the law.

The respondent's counsel claim that as no objection was made on the hearing, that a simple request or direction was insufficient, it may be presumed that the person whose name was subscribed was personally present when that act was performed. But that cannot be done, because the rule already mentioned excludes presumptions in favor of the validity of the proceedings. And if it did not, there is no room for its application in the present instance. It could not without doing violence to the results of ordinary experience, be presumed that out of 163 names, fifty-one as the relators claim them, and forty-one as the respondents counsel concede them to be, should fail to subscribe their own names to so important a document as this petition was, if they were personally present when their names were respectively subscribed. But this portion of the case does not rest simply on this improbability. For on the hearing, the distinction appears to have been taken by witnesses and counsel, between the case of the signature placed to the petition for the tax-payer in his presence, and by his direction and request, and the simple circumstance of the same thing being done by direction or request alone. Where the presence of the person whose name was subscribed, or that of the person present at its subscription, was regarded as important, and proof could be given sustaining the fact, care seems to have been taken to make it appear. Hence, when the relator's witness Martin L. Hills was examined concerning signatures not subscribed by the persons themselves, as to John and David Tripp, and Talmadge Pulver, he stated that their names were subscribed in their presence and by their request. And as to others, he stated that their names were placed to the

petition by their direction or request, but without adding anything concerning the presence of either of these persons. The examination of Nicholas Brandt took the same direction, for as to Hugh and James McGill, who had been previously included among persons whose names he had signed at their request, he stated further on his redirect examination that he signed each of their names in the presence of the person whose name was signed. The inference is very clear from this evidence that they were the only persons among those he had previously named whose named were so subscribed. The witness William S. Thompson appears to have had his attention directed to the propriety of mentioning his own personal presence when certain signatures were obtained and subscribed by the request of the persons whose names they were, for in four such instances he says that the names were signed in his presence. These three witnesses proved nearly all the signatures subscribed either by the act of the persons bearing the names, or by some other person by their respective requests. And if any others were subscribed in the presence of the tax-payer himself, it is certainly to be presumed they would each have mentioned it as long as their attention appears to have been directed to that subject.

In addition to that, the manner in which the statement upon the subject of signatures being placed to the petition at the request of the person whose name was so subscribed was made, imports that it was all the witness could relate upon the subject. Generally it was simply that the witness signed by direction or request of the person whose name was subscribed. Whether the petition was present when the direction was given, or the request made, or the name was subscribed in the presence of the person bearing it, was not stated. And from the evidence given, no reason exists for supposing that the witnesses knew more upon the subject they testified about than they stated in their evidence. It follows, therefore, from all these considerations, that the names of the persons subscribed simply upon direction or request must be excluded as not sufficiently authenticated,

The People ex rel Hoag *v*. Peck.

and that will leave less than a majority both in names and property in favor of the application.

It was shown on the hearing in favor of the application that by treating joint owners or occupants as one name there were two hundred and fifty-five names on the assessment roll, excluding, as they should be under the act of 1871, all persons taxed only for dogs. Joint owners or occupants, by the act of 1871, when taxed as a partnership, as by the assessment roll appears to have been the case in this town, are to be regarded as a tax-payer only within the express terms of the acts of 1871 (Laws of 1871, 2116), and for that reason should be included simply as one person. A majority of these persons would be 128, including .the firm of R. & S. Bachman as one person in the table of names presented by the respondent's counsel, and but 119 personally subscribed the petition with those who appeared on the hearing and desired to join in the application.. To these persons, it is claimed, there should be added what is called nine others, whose names were subscribed in their presence; but as four of these persons appear on the assessment roll as two firms of Hugh and James McGill and John and David Tripp, they can only be included as two persons under the terms of the statute, rendering a partnership taxed liable to be treated as a tax-payer only. Adding these nine, for the reason stated, as only seven persons, and they can be called no more under the language of the statute, and the number falls two under the requisite majority.

The property of the town included in the assessment roll amounted to the sum of $724,900, one-half of which would be $362,450. Of that, the 119 persons already mentioned owned, or were taxed for, $342,418. And those which it is claimed should be added, because their names were subscribed in their presence as well as by their request, were assessed for property in the aggregate amounting to the sum of $5,150. Which, added to the other amount, would only make the sum of $347,575 ; and that would be $14,875

under the requisite majority, so far as taxed property is concerned.

But the evidence does not justify the conclusion that all of these seven should be added to the 119. For, as to John Decker, the evidence given by Mills was that he wrote his name. He says: I wrote it in the wagon by his request. "I called upon that John Decker to sign the petition. He requested me to put his name down, and I put it down." The same witness says he got Darius Palmer to sign the petition. And he afterward added, "I know the name of Darius Palmer was signed to the petition in my presence and by his direction." He had also previously stated that Palmer at the store of the witness told some one to sign the petition for him. As to George Roraback, the same witness said that his signature was in the handwriting of the witness. He then adds he signed it at my store. I remember asking him to sign the petition. He also says that he signed the name of Nicholas Smith at the house by his request. The evidence concerning these signatures, four in number, it must also be remembered, was given by one of the witnesses, who, in his own statement, was careful to add that the signatures of some of the persons to the petition were placed there by him at their request, and in the presence of the persons whose names were signed. The omission of that circumstance in the cases of these four persons is rather more than commonly significant; and, in its absence, it could not properly be assumed that either was present when his name was placed by this witness to the petition. Taking them from the seven which it is claimed should be added to the 119, and the names are six below the majority required by the statute, and the property $15,415 below. It follows, from this view of the evidence, that the decision of the county judge was erroneous. And, for the reasons stated in the opinions delivered in the unreported cases decided by the Court of Appeals, the proceedings should be reversed, and dismissed, with costs.

Proceedings reversed.