The plaintiffs were, for the purposes of this action, holders of the legal title to the premises involved herein. There had been laid upon the premises an assessment for a municipal purpose, which had been confirmed, and had become an apparent lien thereon. (Laws of 1854, chap. 384, p. 868, § 21.) At the time of laying on this assessment, the premises were unoccupied. Hence, the assessment could not be made upon any one as occupant, and was made, as it must be, against some one as owner. (Newell
v. Wheeler, 48 N.Y., 486.) It so chanced that the owner named was not the plaintiffs, nor either of them, nor was he the real owner. Hence the assessment, and all proceedings connected, though prima facie regular and valid, are, on the disclosure of this fact, shown to be irregular, invalid and illegal: (48 N.Y.,supra.) Yet, though they are so, it is only upon the proof of this fact that they can be shown to be so. This fact can be shown only by evidence, dehors the record, of the official proceedings of the defendant's agents.
The assessment has not been collected, nor paid. The defendant has made no sale of the premises, on account of its non-payment.
Upon this state of facts, the question arises, whether the *Page 283 
plaintiffs can maintain an action, in which they may give proof of the extrinsic fact above noticed, and have a judgment which shall set their lands free from this apparent lien.
This is not an action to restrain public authorities from laying or collecting an assessment, as is suggested upon the points of the defendant. It is an action whose object is to remove a cloud from a title, though, if successful, an accompanying result will be, that this assessment may not be collected under existing proceedings. (Crooke v. Andrews,40 N Y, 547.) So that the inquiry is, whether the plaintiffs' case is within the rule upon which the courts interfere to remove a cloud from title. That rule is this: When the claim or lien purports to affect real estate, and appears on its face to be valid; when the defect in it can be made to appear, only by extrinsic evidence, which will not necessarily appear in proceedings by the claimant thereof to enforce the lien, there is a case presented for invoking the aid of a court of equity, to remove the lien which is a cloud upon the title. When the extrinsic evidence is oral solely, the rule becomes the stronger. (Per SELDEN, J., Ward v. Dewey, 16 N.Y., 519, and cases cited by him; Hatch v. City of Buffalo, 48 id., 276.) From the facts above recited, without doubt, all of the elements of this rule appear in this case, save one. The lien, if valid, affects real estate. On the face of the record it appears to be valid. The defect in it can be made to appear only by extrinsic evidence. It remains to inquire whether that defect will also necessarily appear in any proceedings which a party claiming under the lien must produce to establish his title. It is provided, in the charter of the defendant, that, if any assessment shall remain unpaid, a sale shall be made of the property assessed, (Laws of 1854, supra, p. 879, § 26), of which a certificate shall be delivered to the purchaser, which shall be recorded, and shall thereafter constitute a lien thereupon. (Id.) If the land is not redeemed as provided (id., 880, § 29) there shall be executed a proper conveyance of the land, which shall contain a brief statement of the proceedingshad for the sale *Page 284 
of the lands, and which shall be evidence that such sale andother proceedings were regularly made and had according to theprovisions of the act. (Id., 881, § 33.) The terms of significance there are, that the conveyance shall be evidence that the sale was regularly made and had, and that the proceedings of which the statute requires a brief statement in the conveyance, were regularly made and had. But it shall be evidence, only of those proceedings of which that brief statement is required; for a statement of no other is authorized. The proceedings authorized to be stated, are those had for thesale. At once arises the query: Does this phrase include all the proceedings preceding the sale, from the first official act, looking toward the laying of an assessment, until the completion of the matter in the execution of a conveyance; or does it mean only those proceedings connected immediately with the sale, such as the publication of the notice requiring payment? (Id., 878, § 24.) This question has already been answered by this court. InRathbone v. Hooney (decided Oct. 6th, 1874),* it was held that the phrase under consideration embraced the sale, and the other proceedings connected with the sale, but not the assessment or proceedings which take place before the right to sell the premises attaches. (See, also, Beekman v. Bingham,5 N.Y., 388.) The distinction is, between the sale itself and the proceedings connected with it; and the power to sell, and the proceedings upon which that power is dependent. (Striker v.Kelly, 3 Denio, 323; Varick v. Tallman, 2 Barb., 113.) The decision in Rathbone v. Hooney (supra), is not inconsistent with that in Scott v. Onderdonk (14 N.Y., 9). The latter was upon provisions in the charter of the defendant as it existed in 1834. (Laws of 1834, chap. 108. p. 90.) There is a similarity in that act, with the subsequent charter of 1854. But in the provision corresponding with that which we have been just considering, there is a difference worthy of notice. The forty-fifth section of chapter 108 of Laws of 1834, upon whichScott v. Onderdonk (supra) is founded, provides that the conveyance shall briefly set forth *Page 285 
the proceedings had for the sale thereof; and that by forcethereof, the purchaser shall be entitled to the possession ofthe premises for the term therein specified; and that all persons in possession shall surrender, and in default thereof the grantee shall be entitled to the same remedy to recover possession, as is had by law to remove a tenant holding over; that in the proceeding for such remedy, the conveyance shall be deemed prima facie evidence of the facts therein recited and set forth. It will be observed that, by the force of the conveyance, the grantee was entitled to the possession of the premises. He was not required to show more than that. Its production in evidence entitled him to possession, without showing another fact. So that a purchaser, armed with such a conveyance, could rest upon its efficacy alone, and to repel his claim for immediate possession, the owner would need to make proof aliunde, of some countervailing fact. Hence, the learned judge was right, in 14 New York (supra), in holding that the possession of such a conveyance gave ground for an action to set it aside, within the rule in equity. It is true that the opinion goes farther, and holds that the proceedings, which are to be briefly set forth in the conveyance, would properly recite the ordinance of the common council imposing the assessment; but this was not necessary to the conclusion, which had already been reached upon the clause in the section giving such important force to the conveyance itself. In the corresponding section in the charter of 1854 there is a difference; the effect of the execution of a conveyance is somewhat abated; it no longer, by its own force, entitles the purchaser to the possession of the premises, though he is declared to be entitled thereto in pursuance of the terms of the conveyance, and may obtain possession by summary proceedings, in the same manner as provided by law for the removal of persons who hold over after sale by execution against them. In this connection it is well to say that, in a proceeding to remove a person holding over after a sale on execution, it is necessary to aver in the affidavit or petition that the execution is against the person who it is *Page 286 
alleged is holding over. (2 R.S., 513, § 28, sub. 4; § 29.) Such an averment may be traversed (§ 34), and a trial of the issue is to be had. (Sec. 35.) Of course, he who initiates the proceeding has the affirmative, and must, attempt proof, among other things, of the identity of the person in possession and the person named in the execution, and, if he does not succeed therein, must fail in his proceeding. The same is true of a proceeding under the charter of the defendant. It follows that if the defendant should sell, and give a certificate thereof (Laws of 1854, 879, § 26), and in due course after that a conveyance should be executed (id., 881, § 33), the purchaser, to enforce his lien or title, must prove at least so much of the facts and proceedings which gave the power to sell as to show the identity of the owner or occupant with the person named in the roll, and, failing in that, would fail in asserting his claim. In undertaking to make such proof, the fact would appear that the assessment was not made to the owner of the premises nor to an occupant thereof, and thus would be manifested the defect in the apparently valid lien, which would show that it had no validity. The plaintiffs have, then, this security for their title, and the rule above stated, so far is not covered by the facts of their case. Nor is this effect averted by section 10, chapter 384, Laws of 1854 (pp. 873, 874), by which it is provided that "no warrant for the collection of any assessment shall be issued by the common council until all proceedings had in laying said assessment shall have been examined and certified as correct by the street commissioner and the attorney and counsel of the city, which certificate shall be indorsed upon or annexed to the assessment roll, and shall beconclusive evidence as to the regularity of the proceedings." It does not in terms appear from the case that this certificate was made. But the admission and averment in the answer is that the assessment was laid, and that it was in all respects regular and legal, and is now a lien upon the premises described in the complaint. This admission must cover the facts of the examination of the roll and the making and indorsing thereon of the certificate required by *Page 287 
this section. But I do not think that this section stands in the stead of proof by a purchaser that the assessment was against the owner or occupant of the premises. I think that the certificate is evidence that the proceedings which were had were regular, to wit: that the assessors did hold a legal meeting of their board, and did with formal regularity lay an assessment upon the premises, and did with formal precision lay it against the person whom they named as owner. But the certificate cannot be evidence of a fact which must exist before the assessment is made, and independent of the making of it. A judgment record imports verity, and as long as unimpeached for fraud or other sufficient cause, it is conclusive evidence of the truth of the contents; but a record in which A is the party cast in judgment, cannot be proof conclusive of a judgment against B. So this assessment against one as owner, is not made an assessment against another, though the roll has the certificate indorsed. So that the certificate, if produced by the purchaser, would not prove that the one against whom the assessment was laid was the owner of the lands. That fact still rests in pais, and must be shown as the foundation of the validity of the assessment.
The points made by the appellant, that the respondents have not shown themselves to have been aggrieved by the assessment (Laws of 1873, chap. 863, pp. 1373, 1374, § 38); and that there having been no sale under this assessment, they are too soon in bringing their action, have not been considered; a consideration of them being needless in the determination of this action.
For the reason above given, the judgment appealed from must be reversed and a new trial granted, with costs to abide the event.
All concur.
Judgment reversed.
* 58 N.Y., 463. *Page 288