The Town of Springport, Appellant, *v.* The Teutonia Savings Bank, Respondent.

Same, Appellant, *v.* The Franklin Savings Bank, · Respondent.

Same, Appellant, *v.* The German Uptown Savings Bank, Respondent.

While the existence of a defense, the risk of losing evidence, or the apprehension of a multiplicity of suits may not, either of them separately, be a sufficient ground for restraining suits at law upon, or decreeing, the cancellation of instruments, especially where proof of extrinsic facts is not necessary to establish the defense, yet when all these elements are combined and extrinsic proof is necessary to establish the defense a proper case for equitable relief is established.

Plaintiff issued its bonds, negotiable in form, to a large amount and in great numbers under the act authorizing it to subscribe to the capital stock of the C. L. Railroad (chap. 314, Laws of 1869), which provides (§ 2), that a certified copy of affidavits of the assessors of the town that the required consents of a majority of the taxpayers of the town have been given, and the consents shall be presumptive evidence of the facts therein contained. In actions brought to restrain the holders of said bonds from transferring them and to have them delivered up and canceled, it appeared that while the affidavits and consents were in form sufficient, the consents of a majority of the taxpayers were not in fact obtained, and that the proceedings for bonding the town had been reversed and annulled by judgment of this court (*People ex rel.* v. *Allen*, 52 N. Y., 538), rendered, after defendants became holders of the bonds. *Held*, that plaintiff having established the necessary preliminary point that the bonds and the record of proceedings for their issue created a *prima facie* liability, and having established the other requisite facts was entitled to the relief sought; that the parties here, not having been parties to the proceeding in which said judgment was rendered, it was not binding upon and did not estop defendants from setting up the affidavits of the assessors as proof of the requisite consents, and so, the record of reversal would not be a defense to any action on the bonds, and would not avoid the necessity on the part of the town of being at all times prepared with evidence to rebut the presumption afforded by the affidavit; and that plaintiff was entitled to relief from this burden and from vexatious litigation.

*Town of Venice* v. *Woodruff* (62 N. Y., 462), distinguished.

Also, *held*, that the affidavit of the assessors was not conclusive in favor of

defendants; and that the railroad commissioners could not estop the town from disputing the consents.

Also, *held*, that an omission of an offer in the complaint to return the stock of the railroad corporation, even if the town was bound to surrender it, was not fatal to the action, the parties having gone to trial on the merits without objection.

(Argued November 14, 1878; decided December 10, 1878.)

APPEALS from judgments of the General Term of the Supreme Court, in the fourth judicial department, affirming a judgment in favor of defendants, entered upon decisions of the court on trial at Special Term.

These actions were brought to have certain bonds issued by plaintiff under the authority of chapter 314, Laws of 1869, as amended by chapter 152, Laws of 1870, delivered up and canceled and to restrain defendants from transferring them.

Of these bonds $100,000 were issued, the bonds varying from $100 to $500 each, all in form negotiable. The court found the following facts:

"That the bonds described in the several complaints in these actions were issued without the consent first obtained of a majority of the taxpayers of the town of Springport owning more than one-half of the taxable property of said town assessed, etc., as required by chapter 314 of the Laws of 1869, and the laws amendatory thereof, and that the proceedings and adjudications of the assessors of said town to the effect that such consent had been first duly obtained, were before the commencement of this action by the judgment of the Court of Appeals wholly reversed, annulled and held for naught; that before such reversal and nullification, and while the evidence of such proceedings and adjudication of the assessors was on file, in the clerk's office of Cayuga county, as required by law, and without any notice of the facts constituting the grounds of such reversal, the defendants in these actions severally became the purchasers of the bonds described in the several complaints herein, in open market, in good faith and par value; that the bonds in question were not

issued in conformity with the law authorizing the issue of bonds of the town of Springport in the respect that they were not under seal."

The court found as conclusions of law:

"That a complete defense at law exists in favor of the plaintiff to any action which may, at any time, be commenced by the defendants or by any other person on the said bonds, and that, for this reason, no grounds of equitable relief in respect of said bonds exists in favor of the plaintiff against the defendants or either of them." Judgments were directed dismissing the complaints.

Further facts appear in the opinion.

*Geo. F. Danforth*, for appellant. Although defendants have a defense at law to any action upon the bonds it may also have relief in equity. (*Clark* v. *Iowa City*, 20 Wal., 589; *Town of Queensbury* v. *Cohen*, 19 id., 84; *Merritt* v. *Cornell*, 1 Smith [C. P.], 335.) The relief in equity should be given by a decree canceling the bonds. (2 Story's Eq. Jur., 4, § 693; id., 5; *McHenry* v. *Hazard*, 45 N. Y., 580.) The fact that a defense exists at law is not a bar to the granting of equitable relief. (*Baker* v. *Shebury*, Freem's Ch., 183; *Mayor of Colchester* v. *Lawton*, 1 V. & B.; *Haywood* v. *Divinsdale*, 17 Ves., 112; *Jackson* v. *Millan*, 13 id., 587; *Hamilton* v. *Cummings*, 1 J. Ch., 517; Story's Eq. Jur., § 200; *Scott* v. *Onderdonk*, 14 N. Y., 14; *Ward* v. *Dewey*, 16 id., 522; *Wood* v. *Seely*, 32 id., 113, 114; *McHenry* v. *Hazard*, 45 id., 580; *Fowler* v. *Palmer*, 62 id., 534.) Defendants were not estopped by the act or acquiescence of the commissioners in receiving and retaining the stock of the railroad in aid of which the bonds were issued. (*Weismer* v. *Vil. of Douglas*, 64 N. Y., 91.)

*James Emott* and *Wm. Dorsheimer*, for respondents. The bonds are valid in defendants' hands. (*Howland* v. *Eldredge*, 45 N. Y., 457; *Bank of Rome* v. *Vil. of Rome*, 18 id., 38; *People* v. *Mitchell*, 35 id., 551; *Duanesburg* v. *Jenkins*, 57

id., 177, 184; *Town of Coloma* v. *Eaves*, 92 U. S., 484; *Town of Venice* v. *Murdock*, id., 494; *Starin* v. *Town of Genoa*, 23 id., 450; *Gould* v. *Town of Sterling*, id., 439; *Pierce* v. *Wright*, 45 How. Pr., 1.) The affidavit of the assessors is conclusive and estops the town from questioning their determination. (*People* v. *Brown*, 55 N. Y., 181; *Town of Coloma* v. *Eaves*, 92 U. S., 484; *Town of Venice* v. *Murdock*, id., 494.) Acts done under or in reliance upon judgments afterwards reversed are valid. (*Manning's Case*, 8 Rep., 192–284; *Woodcock* v. *Bennet*, 1 Cow., 711; *Wood* v. *Jackson*, 8 Wend., 936; *Lovett* v. *Ger. Ref. Church*, 12 Barb., 67, 82.) The mere fact that the bonds ought not to be enforced standing alone is not sufficient to justify a resort to an equitable action. (Story's Eq. Jur., § 700*a*; *Grand Chute* v. *Winnegar*, 15 Wal., 355; *Allerton* v. *Belden*, 49 N. Y., 373; *Town of Venice* v. *Woodruff*, 62 id., 467.)

RAPALLO, J. These cases were disposed of in the Supreme Court on the authority of the case of the *Town of Venice* v. *Woodruff* (62 N. Y., 462). It is claimed on the part of the appellant that that case is clearly distinguishable from these, and we think that a comparison of the cases sustains this claim.

The controlling feature of the *Town of Venice* case was, that the plaintiff not only had a perfect defense at law against the bonds for the cancellation of which the action was brought, but that such defense consisted in the non-existence of a fact which it was incumbent upon whoever might seek to recover upon such bonds, to establish, viz., the consent of a majority of the taxpayers of the town to the issue of the bonds, and there was no provision of law making the bonds or any document or record, even *prima facie* evidence of that fact. The town was not therefore under the necessity of proving any affirmative defense, or overcoming the legal effect of any document or instrument by extrinsic proof, but the defect would be apparent on the

showing of any plaintiff who might bring an action upon the bonds. Its condition was analogous to that of a party seeking equitable relief against an instrument invalid on its face. The bonds could only be made operative by proof of a fact which did not exist, and of which there was no legal presumption, and the court could not assume that it would be attempted to be established by false testimony. There was not even any allegation of the apprehension of such a danger. Under such circumstances it is well settled that equitable relief is not necessary and will not be granted, even where the instrument is alleged to be a cloud upon the title to land. The party seeking such relief must in all cases show *in limine* that the instrument which he seeks to have canceled creates at least a *prima facie* liability against him, or incumbrance on his land, which he must overcome by extrinsic proof, and, when the instrument does not affect the title to land, he must also show some special ground rendering his defense at law an inadequate protection. It is not sufficient to show that he has a defense. If that were sufficient it is evident that every legal controversy arising upon a written instrument might be drawn into equity by any party who apprehended that an action at law might at some time be brought against him.

In the *Town of Venice* case it was held that the apprehension that a great number of actions might be brought upon the bonds was not, standing alone, a sufficient ground for equitable interposition. What is said upon that subject has reference to the circumstances of the case then before the court. It appearing that the instruments in controversy did not create even a *prima facie* liability, or call upon the town to present any affirmative defense, and that for the want of that essential feature equitable interposition was not proper in the case of any individual holder, the fact that the holders were or might be numerous was not in itself a sufficient reason for the exercise of the discretionary power of the court in behalf of the town, and the inability of the holders to make out any case against it was a sufficient protection, its

defense resting entirely upon a question of law. (*West* v. *Mayor, etc.*, 10 Paige, 539.) It was not intended to be denied that in the case of instruments creating a *prima facie* liability, and requiring an affirmative defense, to be supported by extrinsic proof of facts, the circumstance that they were held by numerous parties who might bring numerous suits upon them in different places, might under some circumstances be regarded as a ground for equitable interposition, even though, if there were but a single claimant, equitable relief would be denied and the party left to his legal defense, nor that where a party was subjected to or threatened with numerous vexatious actions, equity might not under proper circumstances restrain them.

In cases of this description the propriety of affording equitable relief to a party against prosecution at law, or decreeing the cancellation of instruments rests in the sound discretion of the court, to be exercised according to the circumstances and exigencies of each particular case, and it is impossible to lay down general rules which shall govern all cases; some rules however have been evolved from the numerous cases which have arisen, and among these none is more fully established than that equity will not interfere in the case of an instrument invalid on its face, nor where its invalidity will appear upon the proofs of the party claiming under it, even where it affects the title to land. (Story Eq. Jur., § 700 *a; Ward* v. *Dewey*, 16 N. Y., 522, 528; *Cox* v. *Clift*, 2 id., 118; *Piersol* v. *Elliott*, 6 Peters, 95; *Marsh* v. *City of Brooklyn*, 59 N. Y., 280.) And it is equally well settled that in cases of instruments not affecting the title to land some circumstance in addition to the allegation of a defense, must be shown. The instrument must have been created or obtained by fraud, or there must be some danger that by its transfer to a *bona fide* holder the party may lose the benefit of his defense, or some other substantial reason must be assigned showing that a defense at law is an insufficient protection. (*Hamilton* v. *Cummings*, 1 Johns. Ch., 517, 523; *Minturn* v. *Farmers' Loan and Trust*

*Co.*, 3 N. Y., 498; *Perrine* v. *Striker*, 7 Paige, 598; *Crane* v. *Bunnell*, 10 id., 333; *Grand Chute* v. *Winnegar*, 15 Wall., 373.) The mere ordinary danger of losing evidence, common to every case involving questions of fact, is not, in this State at least, regarded as sufficient, standing alone. If it were, every case where a defense must be made out by oral evidence could be brought into equity. Some special danger or hardship must be shown.

What is said in the *Town of Venice* case in reference to the protection against loss of evidence afforded by the statute for perpetuating testimony, is subject to the criticism that that proceeding might be insufficient in the case of negotiable paper, but it was not a ground of decision in that case and is not very material. The main ground was that the town needed no testimony to sustain its defense, and that the court would not assume that false testimony would be brought against it to prove a fact which did not exist.

Other matters were discussed in the *Town of Venice* case, but they are not material to the present inquiry. The fundamental difference between that case and those now before us is that the latter are not subject to the vital objection which laid at the threshold of the former, and which is the starting point of the opinion. The act under which the bonds now in question were issued provides that an affidavit of the assessors of the town that the required consents of a majority of the taxpayers have been given, shall be filed in the town and county clerks' offices, and that a certified copy of such affidavit and consents shall be presumptive evidence of the facts therein contained, and admitted in any court of this State. (Laws of 1869, p. 679, § 2.) Under this statute all that a bondholder need do to recover on his bond, is to prove its execution and produce a certified copy of this affidavit. The *onus* is then cast upon the town to disprove the alleged consents by extrinsic evidence. A case is therefore made out here bringing the plaintiff within the rule which would entitle it to relief if the instruments affected the title to land, quite as clearly as the plaintiff in the *Town of Venice* case

was without that rule. (*Scott* v. *Onderdonk*, 14 N. Y., 9.)
This action is not sustainable on the ground that the bonds
affect the title to land, but the plaintiff having established the
necessary preliminary point that the bonds and the record of
the proceedings for their issue create a *prima facie* liability,
it only remains to be seen whether the facts in the case dis-
close any further ground upon which the town is equitably
entitled to protection, beyond its legal right to defend such
actions as may be brought against it from time to time upon
the bonds and coupons. It is found as a fact in this case,
and the finding is based upon evidence, that the consents of
a majority of the taxpayers were not obtained. The record
of proceedings which are by law made *prima facie* evidence
of that fact is thus shown to be untrue. It is further found
that these proceedings have, by the judgment of this court,
been reversed and annulled, but it appears that this judg-
ment was rendered after the present defendants became the
holders of the bonds, and in a proceeding by *certiorari* on
the relation of certain taxpayers of the town, against the
assessors, the town clerk, the county clerk and the railroad
commissioners of the town of Springport, to which proceed-
ing neither the town nor the defendants in this action nor any
holders of bonds, were parties. If that adjudication were
binding upon the defendants and estopped them from setting
up the affidavit of the assessors as proof of the consents of
taxpayers, there would be much force in the position that
the town needs no further protection, and that the produc-
tion of the record of reversal of the proceedings for bond-
ing the town would be a sufficient defense to any action on
the bonds and coupons. But we apprehend that this record
would not be available for that purpose. The affidavit of
the assessors was an important muniment of their security;
it was by law evidence of the validity of their demands
against the town, and they could not be deprived of its ben-
efit by an adjudication between other persons to which
neither they nor the town were parties. These were *res
inter alios acta*, and could have no effect upon their rights.

What effect this adjudication might have had in case it had been rendered before the issue of the bonds by the commissioners, as depriving them of their power to issue the bonds, it is not material now to inquire, as it appears that when the bonds were issued the proceedings and affidavit were in full force. That they were afterwards affirmed by the Supreme Court, and were not reversed until the case reached this court, which was long after the issue of the bonds. We do not therefore see on what principle the town could avail itself of this reversal in an action brought by the holders of the bonds, or avoid the necessity of being at all times prepared with evidence to disprove and rebut the presumption afforded by the assessors' affidavit. It appears from the pleadings that the bonds and coupons are very numerous, and negotiable in form, and it is apparent that the town might be subjected to innumerable actions upon them in various courts and places. The present holders assert their validity, and have it in their power to bring actions for the interest from time to time as it accrues. The question whether the consent of the majority of the taxpayers was given has been twice litigated, once in this action and once in the *certiorari* proceedings, and it has been twice adjudged, and the court of last resort has decided that the affidavit of the assessors was erroneous. Yet the same question may be again litigated in every action which may be brought, and the town must be at all times and places prepared to prove its defense or submit to a recovery upon some bond or coupon. On these facts, none of which existed in the *Town of Venice* case, we are called upon to determine whether a case is made out entitling the plaintiff to relief from litigation which would not only be vexatious, but exposes it to a burdensome necessity of being constantly prepared for defense, and, it may be, to serious embarrassment. We think that such a case was made out. While the existence of a defense — the risk of losing evidence, or the apprehension of a multiplicity of suits, may not either of them separately be a sufficient ground for restraining suits at law, or decreeing the cancellation of instruments, especially

where proof of extrinsic facts is not necessary to establish the defense, yet when all those elements are combined, and extrinsic proofs are necessary to the defense a proper case for relief is made. The final adjudication in the *certiorari* proceedings, adverse to the validity of the proceedings for bonding, is a further and substantial ground for maintaining this action as in the nature of a bill of peace, and preventing the same question from being again litigated in numerous actions by the bondholders. (*Eldridge* v. *Hill*, 2 Johns. Ch., 281.)

The point is taken on the part of the defendants that the affidavit of the assessors was an adjudication, conclusive in their favor upon the question of the consents of the taxpayers, and that, having purchased the bonds while that adjudication was unreversed, they are protected by it. The language of the act is that the proof required to show that a majority of the taxable inhabitants representing a majority of the taxable property of the town have given their consent required by the act, shall be by affidavit of the assessors or a majority of them of said town, which affidavit, consent and acknowledgment shall be filed, etc. The act then provides that a certified copy of such affidavit, consent and acknowledgment shall be presumptive evidence. We do not think that it was intended to make the affidavit conclusive and to preclude its contradiction. In *People ex rel. Martin* v. *Brown* (55 N. Y., 180), the act declared that the affidavit of the assessors should be evidence of the fact of consent, but did not say whether it should be presumptive or conclusive. The insertion of the word " presumptive " in the present case would seem decisive against its being held conclusive. To do this would be to confer upon the assessors power to bond the town without the consent of a majority of the taxpayers, and we do not think that any such power was intended to be conferred.. The argument that the commissioners could estop the town from disputing the consents cannot be sustained. They were not officers of the town, and had no power except such as they derived under the act of 1869. The consent of the taxpayers was by the express terms of that act made a condition precedent

to their power to act. Even assuming that when that consent was duly given they became *quasi* agents of the town to perform the acts consented to, such agency being wholly dependent upon the consent, and the commissioners having no power or authority to bond the town or the taxpayers independent of that consent, no act of their's could establish the fact of such consent, or estop the taxpayers or the town from denying that it had been given. It might as reasonably be contended that one assuming to act under an alleged power of attorney, could by representing that he had such power, or by reciting it in an instrument executed by him as attorney, estop his alleged principal from disputing the existence of the power. It requires some act of the principal to estop him from disputing the power of an assumed agent. The agent cannot by his own acts create such an estoppel.

It is further contended that the bonds ought not to be surrendered or canceled, as they might be available to the holders as evidence against some parties, even if not constituting claims against the plaintiffs, and also that the town should not retain the stock of the railroad company, and get back its bonds. The complaint was not dismissed on any such grounds, and these matters are proper subjects for consideration in settling the decree. If the town has the stock and is bound to surrender it, such provision can be made even if the town is bound to give up the stock. The omission of an offer in the complaint is not fatal to the action where the parties go to trial on the merits without objection. The case is like that of a borrower, who, before the statute of 1837, brought his action for the surrender of a usurious security without offering in his bill to pay the sum justly due. If the objection was taken by demurrer it was sustainable but if the defendant answered and went to trial on the merits the proper decree would be made and proper terms imposed. (*Schermerhorn* v. *Talman*, 14 N. Y., 93.) The town did not receive the stock from the defendants in this action nor does it even appear that the town has the stock. We do not

deem it necessary to decide anything on this point except that it is not ground for sustaining the dismissal of the complaint.

I have not discussed the point made by the appellant's counsel in regard to the defect in the execution of the bonds, which consists in the omission of the commissioners to affix a seal to the signatures, as directed in the act. The omission cannot have produced any injury to the rights of the town, and the direction to affix seals was not intended for its benefit, but for the benefit of the lender of the money. I do not regard the point made in respect to it as one which addresses itself with much force to a court of equity as a ground for exercising its discretionary power to decree the cancellation of a security upon which an innocent party has advanced money. I should be inclined if there were no more equitable defense than this, at least to leave the town to its legal defense on this ground. But we have considered it unnecessary to pass upon that point, as a substantial defense to the bonds appears, which is quite sufficient to sustain that branch of plaintiff's case.

The judgments at General and Special Terms should be reversed and a new trial ordered, costs to abide the event.

All concur, Miller, J., in result; Andrews, J.. absent.

Judgment accordingly.