THE TOWN OF ONTARIO, Appellant, *v.* HEZEKIAH HILL et al., Respondents.

It does not necessarily follow from the fact that railroad commissioners, appointed under the act authorizing certain towns to issue bonds and take stock in aid of the L. O. S. R. R. Co. (Chap. 811, Laws of 1868, as amended by chap. 241, Laws of 1869), issued bonds without the requisite consent of tax payers having in fact been obtained as prescribed by the act, so as to make them valid obligations of the town, that they were guilty of official misconduct; the act (§ 2) makes the verified certificate of the assessors of the fact that the requisite consents have been obtained the evidence upon which the commissioners are to act, and where it appears that they acted in good faith in reliance upon the certificate, it is a complete justification.

Where, therefore, in an action brought by a town against railroad commissioners who had issued bonds, which the town under judgments of the U. S. courts had been obliged to pay, it appeared that the requisite certificate was made and duly verified, although in fact the requisite consents had not been obtained, and the court refused to submit the question of good faith to the jury but directed a verdict for plaintiff. *Held* error.

(Argued May 1, 1885; decided June 9, 1885.)

APPEAL from order of the General Term of the Supreme Court, in the fifth judicial department, made May 30, 1884, which set aside a verdict rendered by direction of the trial court and ordered a new trial. (Reported below, 33 Hun, 250.)

This action was brought against the defendants to recover damages sustained by the plaintiff by reason of their official

misconduct as railroad commissioners, in issuing the bonds of the town of Ontario to the amount of $85,000 in aid of the construction of " The Lake Ontario Shore railroad," under chapter 241 of the Laws of 1869. The defendants were appointed commissioners December 24, 1870. In May, 1871, they subscribed for $85,000 of the stock of the road at par, and agreed to pay therefor, in the bonds of the town. In September, 1871, they issued $51,000 of the bonds, and $34,000 thereof on or before July, 1873. Prior to the commencement of the action suits had been brought in the United States court in favor of holders of bonds issued by the commissioners, against the town of Ontario, and judgments recovered thereon, and collected of the town, which judgments, with interest thereon, to the time of the trial of this action, amounted to $17,710.05.

The second section of the act of 1869 makes it lawful for commissioners appointed under the first section to borrow money on the credit of the town, city, or village, not exceeding twenty per cent of the assessed valuation of its property according to the last assessment-roll, and to execute bonds therefor, but subject to the condition and prohibition that no debt shall be contracted, or bonds issued, until the written consent " shall first have been obtained of persons owning more than one-half of the taxable property assessed and appearing upon the last assessment-roll of such town, incorporated village, or city, and a majority of the tax payers as appears by such assessment-rolls respectively, and which fact shall be proved by the affidavits of the assessors, or a majority of them, of such towns," etc., and it is made the duty of the assessors to make such affidavits. The section further provides that when the consent shall have been obtained, the affidavit, consent, and a copy of the assessment-roll shall be filed, and that the same shall be evidence of the facts therein contained and certified in any court of the State, and before any judge or justice thereof.

Prior to August 30, 1870, the defendants, acting as citizens, and having at that time no official relation to the town, procured consents to the bonding of the town, and presented them

on that day to the board of assessors, and the assessors there-upon made the affidavit provided for in section 2 of the act, and the affidavit, consent and assessment-rolls were filed as provided therein.

In August, 1871, after the defendants had been appointed commissioners, and after they had subscribed to the stock of the railroad, but before they had issued the bonds, an action was brought by two tax payers of the town, on behalf of themselves and others against these defendants, as railroad commissioners, and other parties, to restrain the issuing of the bonds, and in the complaint which was sworn to, it was charged that a sufficient number of consents had not been obtained. In September, 1871, the suit was withdrawn as the result of an arrangement between the plaintiffs therein and the railroad company, to reduce the town subscription to the stock from $107,000, as originally contemplated, to $85,000. The question whether the requisite number of consents to issuing the bonds had been obtained was litigated on the trial of the present action. It was substantially conceded that the requisite amount of property was represented by the consenters. But upon an analysis being made of the contents of the assessment-roll, and the consents, and after a minute and careful examination instituted by witnesses, and after going through a process of addition and subtraction in respect to the names on the assessment-roll, and a deduction from the consents of names improperly there, it was made to appear that a few less than a majority of the tax payers had signed the consents. The official misconduct charged in the complaint is in substance that the commissioners issued the bonds, knowing that the majority of tax payers had not consented, and that they procured the assessor to make the affidavit by false representations that the consents contained such majority.

The trial judge directed a verdict for the plaintiff for $17,-710.35, and refused to submit the question as to the good faith of the defendants. Other facts appear in the opinion.

*William F. Cogswell* for appellant. The affidavit of the

assessors was not conclusive evidence and binding upon the commissioners to issue the bonds. (*People* v. *Brown*, 55 N. Y. 180, 194; *Springport* v. *Savings Bk.*, 75 id. 397.) The action was not barred by the statute of limitations. It did not accrue until the town had been damnified by payment of judgments which were recovered against it. (*Bk. of Utica* v. *Childs*, 6 Cow. 238; *Argall* v. *Bryant*, 1 Sandf. 98; *Troup* v. *Smith*, 20 Johns. 33; *Decker* v. *Mathews*, 12 N. Y. 313; *Thayer* v. *Manley*, 73 id. 305; *Northrop* v. *Hill*, 57 id. 351; *Hibbert* v. *Martin*, 1 Camp. 538; *Roberts* v. *Reid*, 16 East, 215; *Gillon* v. *Boddington*, 1 Car. & Payne, 541; *Inhabitants of Veazie* v. *Penobscot R. R. Co.*, 49 Me. 119; *Bk. of Hartford* v. *Waterman*, 26 Conn. 324.)

*Charles H. Roys* for respondents. There can be no *bona fide* holding where the law did not authorize the issue of the bonds. (*East Oakland* v. *Skinner*, 9 Otto, 94; *Henry* v. *Root*, 33 N. Y. 537; *Cagwin* v. *Town of Hancock*, 84 id. 532; *Town of Venice* v. *Woodruff*, 62 id. 462; *Starin* v. *Town of Genoa*, 23 id. 439; *Gould* v. *Town of Sterling*, id. 456; *Town of Lyons* v. *Chamberlain*, 89 id. 578.) The affidavit and determination of the assessors is judicial in its character and is a full protection and justification for the commissioners in issuing the bonds. (65 Barb. 435; 53 N. Y. 547; *Pierce* v. *Wright*, 45 How. 1; *Corwin* v. *Campbell*, id. 9; *Town of Springport* v. *Teutonia Bk.*, 84 N. Y. 409; *People* v. *Allen*, 52 id. 538; *Howland* v. *Eldridge*, 43 id. 457; *People* v. *Mitchell*, 35 id. 551; *Lange* v. *Benedict*, 73 id. 12; *Bell* v. *Pierce*, 51 id. 12; *Williams* v. *Weaver*, 75 id. 30; *Jenkins* v. *Waldron*, 11 Johns. 114; *Ross* v. *Wood*, 70 N. Y. 8.) The assessors had jurisdiction to determine the fact of consents, and their affidavit protects the commissioners acting in good faith upon it. (*Porter* v. *Purdy*, 29 N. Y. 106; *Roderigas* v. *East. R. S. Bk.*, 63 id. 464; *Colton* v. *Beardsley*, 38 Barb. 29; *Sheldon* v. *Wright*, 1 Seld. 497.) The defendant commissioners' acts in subscribing for the stock and issuing the plaintiff's bonds in payment thereof being purely ministerial, they are protected by the affidavit of

the assessors to the same extent that a sheriff is protected by his execution and the judgment upon which it issues. (*People* v. *Warren,* 5 Hill, 440 ; *Webber* v. *Gray,* 24 Wend. 485 ; *Hart* v. *Dubois,* 20 id. 236 ; *Savacool* v. *Boughton,* 5 id. 171 ; *Wilcox* v. *Smith,* id. 231 ; *Hill* v. *Haynes,* 54 N. Y. 153 ; *Arrex* v. *Brodhead,* 19 Hun, 269 ; *Clearwater* v. *Brice,* 4 id. 728 ; *Barr* v. *King,* 11 id. 253 ; *Pinckney* v. *Hegeman,* 53 N. Y. 31 ; *Weaver* v. *Devendorf,* 3 Denio, 117 ; *Barhyte* v. *Shepherd,* 35 N. Y. 238.) The commissioners were not called upon to examine or investigate the consents and property represented thereby annexed to the affidavit and compare them with the tax payers and the valuation on the assessment-roll filed with the consents, to see whether the assessors' affidavit was correct. (*People* v. *Halsey,* 37 N. Y. 344 ; *People* v. *Mitchell,* 35 id. 551, 553, 557 ; *Ross* v. *Curtiss,* 31 id. 606 ; *People* v. *Brown,* 55 id. 180 ; *Van Rensselaer* v. *Cottrell,* 7 Barb. 127 ; *Hudler* v. *Golden,* 36 N. Y. 446 ; *Sheldon* v. *Van Bushkirk,* 2 Comst. 473 ; *Chegary* v. *Jenkins,* 5 N. Y. 376 ; *Jenkins* v. *Waldron,* 11 Johns. 114 ; *Swift* v. *City of Poughkeepsie,* 37 N. Y. 511.) Absolute exemption from personal liability for errors and mistakes must be given to all public officers in the performance of duties that are ministerial or *quasi* judicial. (*Easton* v. *Calender,* 11 Wend. 91 ; *Cunningham* v. *Bucklin,* 8 Cow. 178 ; *Wilson* v. *Mayor, etc.,* 1 Denio, 595 ; *Yates* v. *Lansing,* 5 Johns. 282 ; *Pratt* v. *Bogardus,* 49 Barb. 89.) The plea of the statute of limitations was shown by the uncontradicted testimony and admitted facts to be a perfect defense to the action and the trial judge's refusal to nonsuit on that ground was error. (Code of Civ. Pro., § 382, sub. 8 ; *Town of Venice* v. *Breed,* 65 Barb. 597 ; *Foot* v. *Farrington,* 41 N. Y. 164 ; *Northrop* v. *Hill,* 57 id. 351 ; *Converse* v. *Miller,* 21 Hun, 367 ; *Troup* v. *Smith,* 20 Johns. 32 ; *Leonard* v. *Pitney,* 5 Wend. 30 ; *Allen* v. *Mills,* 7 id. 202 ; *Bk. of Utica* v. *Childs,* 6 Cow. 238 ; *Thayer* v. *Manly,* 73 N. Y. 305 ; *Carr* v. *Thompson,* 87 id. 160 ; Angell on Limitations of Actions, § 138 ; *Oothout* v. *Thomp-*

*son*, 20 Johns. 277; *Argall* v. *Bryant*, 1 Sandf. 98; *Town of Venice* v. *Breed*, 65 Barb. 605.)

ANDREWS, J. The question of the invalidity of town bonds, issued under circumstances similar to those in this case, is not an open one in this State. The evidence, upon a careful analysis, discloses, that although the signatures to the consents exceed in number one-half of the names on the assessment-roll, nevertheless, when sifted, and only such names are counted as were legally entitled to be reckoned, there are of qualified signers something less than a majority of those whose names are upon the assessment-roll of 1869. There was a failure, therefore, to comply with the fundamental condition of the bonding acts, that a certain proportion of tax payers, as specified in the particular act, should consent to the bonding before a debt should be created or bonds be issued. The act of 1869 does not substitute the affidavit of the assessors therein provided for in place of the fact of consent, or make it conclusive evidence of the performance of the condition. The Town Bonding Acts have usually contained some provision for a verification of the fact of consent by the affidavit of assessors or other persons. The act chapter 375 of the Laws of 1852, which came under the consideration of this court in *Starin* v. *Town of Genoa* (23 N. Y. 440), required that the supervisor and commissioners who, under that act, were charged with the duty of obtaining the consent, or some one or more of them, should make an affidavit to be attached to the consent, and to be filed, to the effect that the persons assenting comprised two-thirds of the resident tax payers on the previous assessment-roll, but there was no provision making the affidavit evidence. The court held that the affidavit was not competent evidence of the fact certified, and that the plaintiff was bound to prove affirmatively by competent common-law evidence that the required number of tax payers had consented. The act of 1869, under which the bonds in this case were issued, is broader than the act of 1852 considered in the *Starin* case. It declares that the fact that the requisite consent had been obtained should be

proved by the affidavit of the assessors, and that the affidavit, consent, and a copy of the assessment-roll should be filed, and they are made evidence in any court, or before any judge, of the facts therein contained. A similar provision in the act chapter 398 of the Laws of 1866 was construed by this court in *Cagwin* v. *Town of Hancock* (84 N. Y. 532). The action in that case was brought against the town to recover the amount of interest coupons on town bonds issued under the act, which the plaintiff had purchased for full value from a holder of bonds, who was also a purchaser for value. The action was defended on the ground that the requisite number of tax payers had not consented to the bonding, and the trial court sustained the defense. The judgment was reversed by the General Term on the ground that the affidavit of the assessor, made in conformity with the terms of the act before the bonds were issued, was conclusive of the fact therein stated in favor of a *bona fide* holder of the securities. This court reversed the judgment of the General Term, and affirmed the judgment of the trial court on the ground that by the true construction of the act the affidavit was made *prima facie* evidence only of the fact certified, and that the defendant was not precluded thereby from showing that, in truth and fact, the requisite consent had not been obtained; and further, that there could be no *bona fide* holding of bonds issued without consent in fact, which would preclude the town from contesting their validity. These cases, considered in connection with the proof in this case, establish the proposition that the bonds issued by the defendants never had a legal inception, and were void. The town could have successfully defended against them in the courts of the State, and it would have been no answer that the bonds were held by purchasers for value without actual notice of the defect in the authority of the commissioners. The town has been compelled to pay a portion of the bonds, pursuant to judgments obtained in the courts of the United States in opposition to the rule and principle established in the courts of this State.

But conceding, as we must upon the evidence, that the bonds were issued by the defendants without authority — in the sense

that they were issued without the requisite consent having in fact been obtained so as to make them valid obligations of the town — it does not follow that the defendants in issuing the bonds were guilty of official misconduct. The second section of the act of 1869 prescribes a rule of conduct and judgment for the government of the commissioners in determining the question whether the requisite consent of tax payers, in number and in respect of property, has been obtained so as to justify them in performing the executive and ministerial act of executing and delivering the bonds. They, of course, are bound to act in good faith and without fraud ; but so acting, the verified certificate of the assessors, made in conformity with the act, is a complete justification of and protection to them in issuing the bonds whatever the abstract truth may be, and whether or not the requisite majority of tax payers have consented. The act is incapable of any other reasonable construction. The commissioners are authorized to issue the bonds upon the consent of the majority of tax payers representing a majority of the taxable property appearing on the assessment-roll. But they are not charged with the duty of procuring the consent, or of ascertaining the fact of consent by inquiry, or the examination of witnesses, or from a comparison of the assessment-roll with the consents. The second section prohibits commissioners from contracting any debt, unless the specified consent shall first have been obtained, and then follows the clause, " and which fact shall be proved by the affidavits of the assessors," etc., thus plainly making the affidavits the evidence upon which the commissioners are to act in determining whether the requisite consent has been given. The affidavit protects the commissioners acting in good faith, because the legislature manifestly so intended. It does not protect the bondholders, because the assessors and commissioners are mere agencies to bind the town on the precedent condition of actual consent, the performance of which purchasers must ascertain at their peril, and while the affidavit of the assessors and the act of the commissioners afford some assurance of the regularity and validity of the proceedings,

they are as to third persons the assertions of special public agents, which do not bind the town. The town is not, however, remediless in case the assessors, contrary to the fact, certify that the requisite consent has been obtained, or in case the commissioners, acting upon the certificate, issue the bonds. The proceedings may be reviewed on *certiorari* (*People, ex rel. Yawger,* v. *Allen,* 52 N. Y. 538; *People, ex rel. Haines,* v. *Smith,* 45 id. 772); the town may bring an equitable action to cancel the bonds and restrain their transfer (*Town of Springport* v. *Teutonia Savings Bank,* 75 N. Y. 397; *S. C.,* 84 id. 403); or it may await the bringing of an action to enforce the bonds, and defend on the ground of their invalidity. (*Starin* v. *Town of Genoa,* and *Cagwin* v. *Town of Hancock, supra*).

The trial court directed a verdict for the plaintiff for the amount of the judgments recovered and collected of the town, with interest, and refused to submit the question of the good faith of the defendants to the jury. We are of opinion that this direction was erroneous. If there was any evidence of bad faith on the part of the defendants in issuing the bonds, it was, to say the least, far from being conclusive. The defendants testified that they believed that the requisite number of tax payers had consented, and issued the bonds in good faith, relying upon the affidavit of the assessors. It is claimed that they had notice from the complaint in the action brought by Gales and others in 1871, that the majority had not consented. It is true that this was charged in the complaint in that action, but the plaintiff discontinued the action soon after its commencement, upon a settlement between the plaintiff and the railroad company, which assumed that bonds to some amount had been authorized, and the issue of consent or non-consent was not tried. The defendants were not bound to accept the statement of the plaintiff in that action, as against the affidavits of the assessors. So, also, the fact that a paper, purporting to be a revocation of consent on the part of certain tax payers was, in 1870, served on one of the persons who was subsequently appointed a commissioner, did not tend to show fraud on the part of

the commissioners in acting upon the certificate of the assessors. The general course of adjudication in this State up to 1873 was adverse to the right of a consenting tax payer afterward to revoke or withdraw his consent. (*In re Town of Greene*, 38 How. Pr. 515 ; *People, ex rel. Hoag*, v. *Peck*, 4 Lans. 528 ; *People, ex rel. Sayre*, v. *Franklin*, 5 id. 129.) The contrary rule was first declared in *People, ex rel. Irwin*, v. *Sawyer* (52 N. Y. 296), decided in 1873. The claim that the defendants induced the assessors to make the affidavit by the false representation that a majority had consented, was controverted on the trial. The affidavit was made before the defendants had been appointed commissioners, and, if what took place at that time tended to show that their subsequent action as commissioners was not in good faith, it was a matter for the jury. The same is true in respect to the claim that the defendants knew that the affidavit was made without an actual comparison by the assessors of the consent with the assessment-roll ; and if this was known to them, it would not establish that they knew the affidavit was false.

For the reasons stated we are of opinion that the verdict was improperly directed. This conclusion renders it unnecessary to consider the other questions in the case.

The order of the General Term should be affirmed, and judgment absolute entered for the defendants on the stipulation.

All concur.

Order affirmed and judgment accordingly.