## MANICE and HAVENS *against* THE MAYOR, ALDERMEN and COM-MONALTY OF THE CITY OF NEW YORK.

The corporation of the city of New York, has power to regulate a street at its own expense, and when the work is completed, cause the same to be estimated, assessed and collected of the persons benefited thereby.

It may by ordinance direct the work to be done and the expense to be assessed, without designating the persons to be assessed or the limits of the territory within which the assessment is to be made, and then cause the work to be done upon a contract providing for the payment when the money is collected upon the assessment. In such a case, the corporation assumes the responsibility of the payment to the contractor notwithstanding the time of making it is deferred, and the work is done at its expense.

It is in the discretion of the corporation to include in a single assessment the regulation of several streets, or to cause the work upon each one to be separately assessed.

Where a contract made in pursuance of an ordinance for regulating several streets and avenues above and below Thirty-fourth street, had been nearly completed, and a second ordinance was passed altering the regulation of the street above Thirty-fourth street, and thereby largely increasing the expense of the whole work; *held* that there was no error in including in the assessment the owners of lots lying below Thirty-fourth street.

A personal demand of the assessment must be made before a levy. This need not however be by the collector, but may be by any one duly authorized to receive it: and where in the complaint the plaintiffs simply allege that no demand was made "by A. S.," (the collector), the defendant by omitting to answer the allegation does not admit that it was not made by his deputy collector.

This action was brought in the superior court of the city of New York by the plaintiffs, who were owners of land in the city lying upon the Fifth and Madison avenues and Thirty-first, Thirty-second, Thirty-third and Thirty-fourth streets, against the defendants for a levy made upon their property under a warrant issued to collect an assessment for regulating parts of the said avenues and streets with other streets. The following facts appeared from the pleadings. On the third of November 1847, an ordinance was

passed by the corporation of the city of New York, that the Fifth avenue between the centres of Thirtieth and Thirty-fourth streets; Madison avenue between the centres of Thirtieth and Forty-first streets; Thirty-first, Thirty-second and Thirty-third streets between the centres of the Fourth and Sixth avenues, and Thirty-fourth, Thirty-fifth, Thirty-sixth, Thirty-seventh, Thirty-eighth, Thirty-ninth and Fortieth streets between the centers of the Fourth and Fifth avenues, " be regulated and curb and gutter stones be set therein where the same are not now set, and the curb and gutter stones reset where the same now are set, and the flagging where the same is now laid be taken up and relaid where the same is affected by such regulation." It was further provided in the ordinance that Martin E. Thompson, John J. Dodge and Revo C. Hance should be " assessors to make an estimate of the expense of conforming to the provisions of the ordinance, to make a just and equitable assessment, therefor among the owners or occupants of all houses and lots intended to be benefited thereby in proportion, as nearly as may be, to the advantage which each may be deemed to acquire." On the 15th of May, 1848, the street commissioner without any further ordinance entered into a written contract with one Pettigrew, for the regulation of the streets and avenues, and the work mentioned in said ordinance. The contract provided, among other things, that *four receiving basins should be built, and eight receiving basins should be taken up and rebuilt, and the culverts properly connected therewith, and all the man-holes built up;* and that for furnishing the materials and building the four receiving basins, and all man-holes, Pettigrew should receive eighty dollars, and for furnishing materials and rebuilding the eight receiving basins, and connecting the culverts therewith, he should receive fourteen dollars each. These items were included in the aggregate of the estimated expense for which the assessment was ultimately made. It was further provided in the contract, that the work should be completed by January 15, 1849, and that Pettigrew

SEL. IV.—16.

should not be entitled to demand or receive payment for any portion of the work or materials until the money should be collected on the assessment. Neither at the time the ordinance was passed nor at any other time did the corporation direct what property should be assessed for the work, nor declare what persons or property were intended to be benefited thereby.

On the 6th of April 1849, another ordinance was passed by the corporation altering the grade of the Fifth and Sixth avenues and Thirty-fifth, Thirty-sixth, Thirty-seventh, Thirty-eighth, Thirty-ninth and Fortieth streets. This alteration related exclusively to the streets above the plaintiffs' land, and involved great additional expense. On the 1st day of May thereafter an ordinance was passed authorizing the street commissioner to alter the contract above referred to, so as to render the regulation of the avenues and streets conformable to the new grade; "the contractors having signified their readiness to conform thereto, on the terms of the present contract." In pursuance of these ordinances, the street commissioner altered the contract with Pettigrew who had nearly completed his work, the provision that he should not be entitled to payment for any portion of the work or materials until after the money should be collected on the assessment being continued.

On the 22d day of September 1849, another ordinance was passed by the corporation; "that Fifth avenue, between the centre of Thirtieth and the centre of Thirty-fourth streets; Madison avenue, between the centre of Thirtieth and centre of Forty-first streets; also Thirty-first, Thirty-second and Thirty-third streets, between the centre of Fourth and the centre of Sixth avenues; and Thirty-fourth, Thirty-fifth, Thirty-sixth, Thirty-seventh, Thirty-eighth, Thirty-ninth and Fortieth streets, between the centre of Fourth and the centre of Fifth avenues, be regulated, and the curb and gutter stones set therein, where the same are not now set, and the curb and gutter stones reset where the same are now set, and that the flagging where the same is now laid, be taken up

and relaid, where the same is affected by such regulation," and appointing Samuel DeMott, Francis Nicholson and William Welles, who had by a change in the law regulating assessments, become assessors, constituting the bureau of assessors, to make an estimate of the expense of conforming to the provisions of the ordinance, and to make a just and equitable assessment thereof among the owners, &c., and repealing all former ordinances inconsistent with it. William Welles having died, subsequently Isaac H. Smith was appointed an assessor in his place.

Pettigrew completed the work, under his contract in Dec., 1849, at which time no estimate of the expense nor assessment had been made. Early in February, 1850, DeMott, Nicholson and Smith made their estimate and assessment of the expense of the work under the original and altered contract with Pettigrew, and on the ninth day of February published a notice in two newspapers printed in the city, stating that they had completed their assessment, and that " the limits embraced by such assessment, include all the houses and lots of ground and vacant lots situate on both sides of Madison avenue, between Thirtieth and Forty-first streets; east side of Fifth avenue, between Thirtieth and Forty-first streets; west side of Fifth avenue, between Thirtieth and Thirty-fourth streets; west side of Fourth avenue, between Thirtieth and Forty-first streets; east side of Broadway, between Thirtieth street and Sixth avenue; north side of Thirtieth street, both sides of Thirty-first, Thirty-second and Thirty-third streets, and south side of Thirty-fourth street, between Broadway and Fourth avenue; north side of Thirty-fourth street, both sides of Thirty-fifth, Thirty-sixth, Thirty-seventh, Thirty-eighth, Thirty-ninth and Fortieth streets, and south side of Forty-first street, between Fourth and fifth avenues," such limits including the property of the plaintiffs. No other notice of the assessment was given to the plaintiffs.

On the 18th day of March, 1850, DeMott, Nicholson and Smith, made a report to the common council of said city,

in which they stated in substance, that they were appointed by the corporation by the ordinance of 22d day of September, 1849, to make an estimate of the expense of conforming to the order and direction of the common council for regulating the above mentioned avenues and streets, and setting the curb and gutter stones therein where the same were not set, and the curb and gutter stones reset where the same were set, and for relaying the flagging where it was affected by such regulation; and they further certified, that they had estimated the expense of conforming to the order at the sum of $37,292·68. The diggings, fitting, regulating, setting and resetting curb and gutter stones and flagging, ------ ---- ------ ------ ---- ------- $31,491 58

|  |  |  |
|---|---|---|
| Surveying, ------ ------ ---- | $2133·71 | |
| Inspecting, ---- ---- ---- ---- | 1908·39 | |
| Advertising, ---- ---- ------- | 50 | |
| Fees Deputy Collector, - ---- | 731 | |
| Fees Assessors, ------ ------- | 731 | |
| Fees Collector Assessments, -- | 247 | |
|  | —— | 5801·10 |

$37,292·68

They further certified, that they had made a just and equitable assessment of the expense among the persons named in the list annexed to their report. This assessment included the work required by the alterations above Thirty-fourth street, as well as that performed under the first ordinance between Thirtieth and Thirty-fourth streets, and assessed upon the plaintiffs $2967,74.

On the 30th of June, 1850, the assessment list was confirmed by the corporation, Abner Sanford appointed to collect the money mentioned in it, and a warrant was subsequently issued to him by the defendants, under color of which he levied upon the goods of the plaintiffs, to pay the amount of the assessment upon them.

Thompson, Dodge and Hance, the assessors appointed in the first ordinance, never resigned their offices, nor made

Manice *against* The Mayor, Aldermen, &c., of New York.

any assessment under the ordinance, but were superseded in consequence of the act constituting the bureau of assessments in the street department of the city.

The cause was tried in July, 1851, before Mr. Justice DUER, without a jury. On the trial it was proved that "receiving basins" form a part of sewers: that they are so placed as to conduct the water from the highway: that in the regrading of streets, the water would be ponded, unless the receiving basins were altered at the same time, and the streets might become impassable: their object is to carry off the surface water underneath, where it can not be carried on the surface, by reason of the grade of the street; it is carried through the basins into the culverts, and through the culverts into the sewers: that if there was no sewer, no receiving basin would be necessary, no matter what the grade of the street was: that a case might arise where the regulation of a street might be made perfectly without basins, as where it was on a ridge from which the water flowed both ways; but in cases where a street is in a valley, or crosses one, it would be impossible to make a perfect regulation without basins and culverts. The evidence having been closed, the counsel for the plaintiffs contended that the issuing of the warrant, the entering on the plaintiffs' premises and levying on their property being admitted by the answer, the plaintiffs were entitled to judgment, unless the facts shown by the pleadings and evidence prove a justification; and submitted that the assessment and all proceedings under it are void; the issuing of the warrant was unauthorized, and the defendants were liable to the plaintiffs for unlawfully trespassing on their property and levying on their goods, because,

1. No estimate of the expense of the work was ever made, as required by the statute.

2. The work was done before any assessment was made.

3. The assessment was not collected before doing the work.

4. The corporation did not do the work at their own expense.

5. It did not appear that the corporation deemed it necessary, for the more speedy execution of the work, to do it at their own expense, nor did it in any manner appear that they intended to do it at their own expense.

6. The common council did not declare what persons were intended to be benefited by the work, nor did they fix the limits of the property to be assessed.

7. The assessment was illegal, in being laid on a small portion of property in the city instead of a general tax.

8. There should be a distinct assessment for each street.

9. The corporation had no right to include in an assessment for work done under the ordinance of 3d November, 1847, below 34th street, additional expenses for new and distinct work done above that street, under the ordinance of 6th of April, 1849.

10. The assessment included the cost of building and rebuilding receiving basins connecting the culverts with them, and building manholes, expenses not authorized by the ordinances under which the work was done.

11. The corporation having appointed three persons to make an estimate and assessment, by the ordinance of 3d November, 1847, thereby exhausted their power, the persons so appointed being competent and ready to act, and not having been removed for any sufficient cause.

12. The contract was made and the work completed under the ordinances made prior to 22d September, 1849; the persons appointed under the ordinance last mentioned, and the amendment of 19th October, 1849, were not authorized to make any estimate or assessment for the work.

13. No personal notice was given, that the assessment had been made.

14. No personal demand was made on either of the plaintiffs for the amount of the assessment previous to the issuing of the warrant.

The point was overruled, and exceptions taken.

The justice thereupon rendered judgment in favor of the defendants, which, upon appeal to the general term was affirmed, and the plaintiffs appealed to this court.

*N. Hill, jr.*, for appellants. I. The defendants admitting the levy on the plaintiffs property, but contending that they were justified by the ordinances and the proceedings under them, they must, to sustain their defense, show the statute authority strictly pursued. It will not be presumed to have been done, but every act essential to the execution of the power must be shown. (*Sharp* v. *Speir*, 4 *Hill*, 89.)

II. No estimate of the expense of the work required by the statute was ever made. (2 *R. L.* 407, § 175.) Thompson, Dodge and Hance never made any, and the only one made by the assessors appointed 22d September, 1849, consisted of the addition of the several items of ascertained costs and expenses in their report particularly specified.

III. An estimate of the expense should have been made before the contract was entered into, or the work commenced; and the money should have been actually collected. (*Elmendorf* v. *The Mayor*, &c., 25 *Wend.* 696; 2 *R. S.* 342, 407, §§ 175, 176; *Doughty* v. *Hope*, 3 *Den.* 249.)

IV. Section 270 of the act of 1813, and the act of February 21, 1824, do not apply to the proceedings in question, because, 1. The common council did not cause the work to be executed and done at their own expense, within the meaning of the statute. Their contract expressly provided, that the contractor should not be entitled to demand or receive payment from the corporation for any portion of said work or materials, until the money should be collected on the assessment to be laid for that purpose. 2. It does not appear that the common council deemed it necessary for the more speedy execution of the work, to do it at their own expense, or that they so intended, and no presumption to that effect can arise from the ordinance itself. (2 *R. L.* 446, §§ 270, 271; *Laws* 1824, *page* 39, § 1.

V. The common council did not declare what persons or property were intended to be benefited by the work, nor did they fix the limits of the property to be assessed. By the passage of the ordinance, the corporation manifest an intention of benefitting certain property, and it is contended, that the whole scope and tenure of the statute requires that the same body shall indicate what houses and lots they intend to benefit. (2 *R. L.* 409, § 178.) There should be a distinct assessment for each street and avenue.

VI. The corporation had no right to include in an assessment for work done under the ordinance of 3d Nov., 1847, below 34th street, additional expenses for new and distinct work done above that street, by the subsequent ordinance.

VII. The assessment includes the cost of building and rebuilding receiving basins, connecting the culverts with them, and building manholes, expenses not authorized by the ordinances under which the work was done. 1. The regulation of a street refers entirely to the surface, and includes the "altering, amending, cleansing and scouring." (*Laws* 1813, 407, § 175.) 2. The ordinance only directed the regulation of the streets, and the laying of curb and gutter stones. There is no more authority to build receiving basins than to make a sewer, of which they constitute a part.

VIII. The corporation had no authority to remove the assessors appointed under the ordinance of November 3, 1847, because, 1. It was a naked power, and when executed it was exhausted. 2. Neither the amended charter, (*Laws* 1849,) nor the ordinances passed under it, directly or by implication, refer to regulations previously ordered.

IX. No personal demand was made on either of the plaintiffs, for the amount of the assessment, previous to issuing the warrant. § 175, *R. L.* 1813, provides that the person assessed shall be liable to pay "on demand," and in default thereof a warrant may issue.

§ 259 provides, that the property can only be sold after the collector has made affidavit of his " demanding " the money several times, &c.    The Superior court, in *Merritt* v. *The Mayor, &c.*, held that this must be a *personal* demand, unless the owner was a nonresident.    ( 1 *Coms.* 79; 7 *Wendell*, 394.)

The statute contemplates the same kind of demand in each case.

*H. E. Davis*, for respondents, cited Dongan's charter, pp. 15 and 26, Montgomerie's charter, §§ 14 and 16, and 2 R. L. 407, § 175, and 446, § 270, and chapter 29 of Laws of 1824, to show the power of the corporation to make, alter, amend and direct the pitching and paving the streets of the city, either at the public expense or on account of the persons upon whom it may be assessed, and to cause a just and equitable assessment thereof to be made upon the owners and occupants of property benefited thereby.    He insisted that the assessment having been affirmed by the common council, it could not be reviewed in this action: that when the corporation proceed and do the work directed, no estimate of the expense is required: that the passage of the ordinances directing the work to be done, and the making of the contract, on the part of the corporation, with Pettigrew for doing the work, are sufficient indications that the corporation deemed it necessary for the more speedy execution of the ordinances to do the work at their own expense, and it was so done; (*People ex rel. Moore* v. *Mayor of New York*, 5 *Barb.* 43; *Wetmore* v. *Campbell*, 2 *Sand.* 341; *Doughty* v. *Hope*, 3 *Denio*, 249; *Stuyvesant* v. *Mayor of New York*, 7 *Cowen*, 606;) and that no formal demand by the collector of assessments was necessary.    The statute required the persons assessed to pay the amounts of their assessments to him.    The warrant required him to demand the amounts previous to the levy, and it is not alleged or pretended in the complaint that such demand was not made previous to the levy.    It

SEL. IV.—17.

is only when the corporation proceeds to sell the lands that the statute requires, as a preliminary step, the collector to make affidavit of *his* demanding the money two several times of such owner or owners. (*Laws of* 1816, *Chap.* 115.)

Gardiner, J., delivered the opinion of the court: I concur in the views expressed by the Superior court in their decision in *Wentmore* v. *Campbell*, that the effect of the statutory provisions in relation to the powers of the city, is to authorize the corporation, after determining to grade a street or perform a public work of that character, to adopt the course suggested by the defendant, or to execute the work at their own expense and after its completion, assess the costs and charges, and collect as in the case of an estimate and assessment prior to the commencement of the work. This disposes of the third and fourth points made by the appellants. The objection that the common council did not cause the work to be executed at their own expense, is met and answered in the same case. They authorized the contract, the corporation were responsible, and the postponement of the payment to the contractors until after the collection of the assessment did not absolve the city from its obligation, but it was bound to take the necessary steps to levy the amount within a reasonable period, or to draw the money for this purpose from the city treasury.

Again, it is objected that the common council did not declare what persons or property was to be benefitted, nor did they fix the limits of the property to be assessed.

The plaintiffs, in their complaint, allege the passing of the ordinance of 22d September, 1848, the designation of assessors, and that they made an assessment including the work embraced in the original contract, and the subsequent alterations; that after completing the assessment, they gave notice through two newspapers of the fact, and of the limits embraced by such assessment; that this was returned, and regularly approved by the common council,

Manice *against* The Mayor, Aldermen, &c., of New York.

without any objection, so far as appears, upon the part of the plaintiffs, whose property was within the assessed limits. If the common council, as the plaintiffs insist, were bound to designate the territory to be assessed, as the charter was silent as to the time when and the manner in which this was to be done, a confirmation of the report of the assessors, which included the whole subject, would be a substantial compliance with the requirement.

Another objection is that there should have been a distinct assessment for each street and avenue. This is not required by the 175th section of the act of 1813, in connection with section 276 of the same statute under which the ordinance in question was passed, and this assessment made. The authority thus granted differs materially from that conferred by the 177th section, in reference to opening streets. Before the corporation can proceed under the section last mentioned, three-fourths in quantity of those proprietors of lands fronting on such streets must petition for the improvement, and the assessment, by the provisions of the next section, is expressly limited to the lots fronting on the street, and those within half the distance of the next street or avenue. No such limitation is imposed by the 175th section, and its omission is strong evidence of an intent to confer upon the common council a discretionary power in this respect.

Again it is said that the corporation had no right to include in the same assessment, for work done under one ordinance below 34th street, additional expenses for work done above that street. The answer to this objection has already been suggested. If the corporation are not limited to the particular street or avenue improved, in the assessment, the territory to be embraced is a matter of sound discretion, and may be extended to all persons benefitted. And as the same territory might be included in two distinct ordinances, there is no reason why the expense incurred under each of them should not be collected

under a single assessment. This course is unobjectionable, and has the advantage of being more economical than the one claimed by the plaintiffs.

The ninth and tenth points were not discussed by the counsel for the appellants.

The eleventh objection is that no *personal demand* was made on either of the plaintiffs for the amount of the assessment. The amount assessed after confirmation is made a lien on lots, of the owners and occupants, &c., "and such owners and occupants shall be respectively liable, upon demand, to pay the sums at which such lots, &c., shall have been respectively assessed." (§ 175.)

The want of a demand by some person authorized to receive the money assessed would, I am inclined to believe, render a levy under the warrant illegal, and the corporation a trespasser. The difficulty with the plaintiffs' case is, that they have not in their complaint averred that no demand was made by any person thus authorized, but merely that "Abner Sanford was appointed to collect the money mentioned in the assessment by the ordinance confirming it, and that no personal demand was made by the said Abner Sandford."

This is admitted, but it does not follow, in the language of the objection, that *no personal demand* was made before issuing the warrant. This is not alleged, and of course not admitted by the silence of the answer. Again, the statute does not require that a demand shall be made before the warrant shall issue, but before it shall he levied. The language is " that in default of such payment, it shall be lawful for the Mayor, &c., by warrant under their hands and seals to *levy* the same by distress." Here the warrant set out in the complaint, expressly directs the collector, one of the defendants, to demand and receive the sums of money of the parties named respectively, and " upon neglect or refusal," he is authorized to levy; not otherwise. There is no pretence in the pleadings or evi-

dence that the collector did not obey this injunction. The judgment, I think, should be affirmed.

WILLARD, J., delivered a written opinion, in which he arrived at the same conclusion.

Judgment affirmed.