DETERMINED IN THE

# FIFTH DEPARTMENT,

AT

# GENERAL TERM,

## January, 1887.

FRANK W. ELWOOD, Respondent, *v.* THE CITY OF ROCHESTER AND AMBROSE C. McGLACHLIN, AS TREASURER OF SAID CITY, Appellants.

*Assessments for opening streets in the city of Rochester — what errors and irregularities are to be liberally construed under section 214 of chapter 14 of 1880 — the passing of an ordinance to lay out a street shows the determination of the common council that it was necessary for the public good — sec. 168 sub. 3 — a party cannot object to an irregularity which does not affect his liability — what is a purchase within section 169 — what is a sufficient designation of the part of the city deemed benefited, upon which an assessment is to be placed under sections 170, 172 — the discretion of the common council, in determining the district to be assessed for the portion of the expense of the work to be paid by the city, is not reviewable — a decision of the commissioners, as to the amount of an assessment upon a particular piece of property made upon conflicting testimony, will not be reviewed — power of the common council to borrow money under section 181 — the estimate of expense required to be made by it does not include damages for land to be taken — what property is not assessable for local improvements under the charter — lands occupied by the Erie canal are not assessable — Constitution, sec. 6, art. 7 — the commissioners cannot divide the territory to be assessed into different districts to which different rules of assessment are to be applied — rule for determining the benefit, given — power of the common council to make a new assessment, when a prior one is vacated, under section 215.*

In considering an appeal from a judgment vacating an assessment imposed be the defendant, the City of Rochester, upon the land of the plaintiff, to defray in part the expense of opening a new street in the city, called Church street; and relieving the plaintiff's land from any future local assessment on account of the expense of opening said street, the court, in referring to the modifica-

tion of the general rule, (requiring all the prescribed conditions to the exercise of the power of taking private property to be strictly complied with), created by section 214 of the charter of the city (chap. 14 of 1880), which provides that all assessments made for improvements in said city should be valid and effectual, "notwithstanding any irregularity, omission or error in the proceedings relating to the same, and all questions concerning the same shall be determined in all courts and places liberally to sustain such proceedings, and with reference to the very right of the case, and not strictly :"

*Held*, that this provision only applied to irregularities, omissions and errors of a formal nature, not affecting the substantial merits.

By subdivision 3 of section 168, the common council are authorized, subject to the conditions and limitations therein contained, to lay out and open any street in the city "whenever they shall judge the public good requires the same to be done."

*Held*, that it was not a prerequisite to the exercise of this power to lay out a street, that the common council should expressly declare its judgment, by resolution or otherwise, that the proposed street is required by the public good; that the effect of this provision is to leave it to the judgment of the common council to determine when the public good requires action on their part, and that their exercise of the power is, of itself, sufficient evidence, if any is needed, that they regard such action as called for by the public good.

*Matter of the City of Buffalo* (78 N. Y., 362); *The Town of Gallatin* v. *Loucks* (21 Barb., 578); *The People ex rel.* v. *The Commissioners* (27 Barb., 94; S. C., affirmed, 30 N. Y., 470) distinguished.

When the proceedings in question were commenced, section 169 of the charter provided that no street should be laid out by the common council so as to run across or over the site of any building, at the time actually erected, of the value of $5,000, without having obtained the consent of the owner of such building in writing, or without having purchased such building. By an amendment, which took effect January 1, 1882, the limitation of value was put at $50,000. Church street was laid out over the sites of one or more buildings, each of which was of the value of $5,000 or over, but none of which was of the value of $50,000. Prior to January 1, 1882, commissioners to appraise the damages of the owners of the lands to be taken for the street had been appointed, who had viewed the premises and taken testimony, but had not made their report. After their report had been filed and confirmed by the common council, the several owners were paid their damages as fixed in the said report, deeds of conveyances being executed by them to the city.

*Held*, that the proceedings of the common council were not invalidated by the provisions of the said section.

That, as there was no actual interference with the possession or rights of the land owners until after the 1st day of January, 1882, after which date their buildings were not of sufficient value to be within the limitations prescribed by the section, the land owners had no cause of complaint.

That the subsequent acquisition of title by the city, although the result of proceedings taken to condemn the lands, was a purchase, in a mode provided by

the charter, and that consequently the case was not within the prohibition of the section.

That a finding that the deeds were not delivered voluntarily, and that the owners would not have sold their lots and buildings at the sum received, but for the compulsory proceedings instituted, was nothing more than a finding that they acted on the compulsion of valid condemnatory proceedings.

That if such proceedings were, in any respect, void as to the owners, the latter were not under compulsion, and their action was in fact voluntary and a waiver of all defects in the proceedings.

That, whether they acted voluntarily or not, was not material as the provisions of the said section were intended to protect them and not the plaintiff.

Section 170 of the charter provided that whenever, by order of the common council, any new street shall be laid out, opened or worked, it is the duty of the common council to determine what portion, if any, of the expense thereof ought to be paid from the public treasury, and what portion, if any, by local assessment, and to direct that the whole expense, to be paid by a local assessment, be assessed upon all the lots and parcels of land to be benefited thereby in proportion to the benefit which each will derive therefrom.

*Held,* that an objection, based upon the claim that the ordinances of the common council did not express or imply that the portions defined therein as being benefited by the improvement were all the portions benefited, should not be sustained, as in view of the provision of the charter as to the measure of liberality with which such proceedings were to be construed, the court thought it was fairly to be implied, from the language of the ordinances, that the portion of the city described therein was deemed by the common council to be the only portion to be benefited by the proposed improvement.

That an objection that the ordinances did not direct that the whole expense, to be paid by the local assessment, should be assessed upon all the lots and parcels of land to be benefited, was not maintainable for the reasons:

*First.* That the charter did not require such direction to be inserted in the ordinance which determines how the expense shall be paid, and that it is enough if it is inserted in the ordinance by which the assessment is directed to be made, as was done in this case.

*Second.* That the direction in the ordinance that the whole expense of the improvement be assessed upon the portion of the city described therein, is a sufficient expression of the judgment and determination of the common council that no part of the expense should be borne by the city treasury.

It was contended that the common council erred in not including a larger area, or the whole territory of the city, in a public tax for at least a part of the expense of the improvement.

*Held,* that in determining what portion of the city was so benefited by the improvement, as that it should bear the whole expense thereof, the common council exercised a discretionary power confided to them, which could not be interfered with in this action unless they acted upon a rule wrong in law

Much evidence was introduced before the referee to show that the premises of the plaintiff were so remote from the projected street, and so situated with

reference to it, as that they would not be benefited, but would be lessened in value by the proposed improvement. The testimony on this point, which consisted almost entirely of speculative opinions of witnesses as to the effect which the new street would have in diverting travel from the street in front of the plaintiff's building, and in lessening the value of the premises, was conflicting.

*Held,* that under these circumstances the action of the common council, in fixing the bounds of the area of benefits, could not be annulled by a court of equity.

*The People* v. *Mayor of Syracuse* (63 N. Y., 291); *Guest* v. *City of Brooklyn* (69 id., 506) followed; *Hassen* v. *City of Rochester* (65 id., 516); *Le Roy* v. *Mayor* (20 Johns., 429); *People* v. *The City of Brooklyn* (23 Barb., 166); *Clark* v. *Village of Dunkirk* (12 Hun 181; affirmed, 75 N. Y, 612) distinguished.

*Quære,* as to whether such a decision could be reviewed on *certiorari.*

Section 181 of the charter provides that whenever it shall be necessary the common council may borrow the whole, or any portion, of the damages awarded for lands necessary for the improvement upon the note or other obligation of the city. Section 179 provides that the common council may set aside the report of the commissioners and abandon the improvement at any time before the final confirmation of the assessment. In the present case the common council, after the amount of such damages had been fixed, but nearly a year before the assessment-roll was confirmed, borrowed, upon the notes of the city, the sum of $144,819.13, and out of it paid such damages.

*Held,* that its action in so doing could not be treated as an election to pay for the improvement by a public tax and not by a local assessment, but simply as an election not to exercise the power to abandon the proceeding.

That the decision of this question rested in the discretion of the common council, and could not prejudice the rights of the plaintiff, whose liability was in no way affected by it.

That there was not anything in the charter to prevent the common council from levying the assessment after the improvement was completed and paid for.

The only estimate which is required by the charter to be made before entering upon the work of a public improvement is an estimate of the expense of such improvement, but where the taking of land is necessary it is not necessary to include in the estimate the damages and charges therefor.

The assessment did not include certain water mains and service pipes owned by the city, and the mains and pipes of certain gas light companies, and the poles and wires of certain telegraph, telephone and electric light companies. By the charter the only property assessable for local improvements is "lots and parcels of land."

*Held,* that the property referred to was not assessable for local improvements.

The commissioners assessed the lands belonging to the State, occupied by the Erie canal, lying within the territory designated by the common council, at the nominal sum of one dollar, instead of the actual value of the benefit.

*Held,* that if the commissioners erred in assessing the said lands it was not by failing to assess them for the full value of the benefit received, but in assessing them for even a nominal sum, as they were exempt from taxation under the provisions

of section 6 of article 7 of the Constitution, prohibiting the State from selling, leasing or otherwise disposing of the Erie canal.

The commissioners, in making the assessment, divided the territory upon which the assessment was directed to be imposed into two districts, one of which they decided would receive a special benefit from such improvement, and the other a general benefit. The first district, which included the plaintiff's lot, they assessed by apportioning to each lot a sum per foot front, without reference to the value of the buildings or improvements thereon, gradually lessening the amount as they proceeded from Church street, placing the maximum amount upon the lots abutting on Church street, and the minimum at the outer limits of that district In the other district they made a general assessment by per centages on the lots therein, taking the valuations from the last preceding assessment roll for general city and county taxes, making changes of value in accordance with their judgment, and placing different per centages upon lots fronting on various streets, having reference to their location with respect to the improvement.

*Held*, that as the commissioners had adopted a wrong principle, which neither the charter nor the ordinance permitted, the assessment was void.

That they had no authority to proceed upon the assumption that a portion only of the territory, deemed by the common council to be specially benefited, would derive a special benefit from the improvement, or that different portions of such territory should be assessed according to different rules.

*The People ex rel.* v. *The County Court of Jefferson* (55 N. Y., 604); *Hassen* v. *The City of Rochester* (65 id., 516; S. C., 67 id., 528) followed

That the general rule for determining the amount of the benefit is to ascertain the market value of the property with the improvement and without it, the excess of the value with the improvement over the value without it, being the amount of benefit.

That the principle adopted in this case violated this rule in two particulars.

*First.* In proceeding upon an essentially different basis of estimate for each of the two districts into which the territory was divided

*Second.* In adopting, in the district claimed to be specially benefited, the frontage of the lots as a basis of estimate, and disregarding the value of the buildings and other improvements.

That as no latent defect was found in the proceedings of the common council prior to ordering the assessment, the plaintiff was not entitled to retain that part of the judgment which declared that his lot was not liable to a local assessment for any part of the improvement, as power to impose another assessment was conferred upon the common council by section 215 of the charter.

APPEAL from a judgment entered in Monroe county on the report of a referee.

*John N. Beckley*, City Attorney, for the appellants.

*Oscar Craig*, for the respondent.

SMITH, P. J.:

The judgment vacates an assessment imposed by the defendant, the city of Rochester, upon the land of the plaintiff, to defray in part the expense of opening a new street in said city, called Church street, and relieves plaintiff's said land from any future local assessment on account of the expense of opening said street. In the proceedings, which resulted in the assessment in question, the city authorities assumed to derive their power from the provisions of the charter of the city respecting the laying out and opening of streets and the levying of assessments to defray the expense thereof, including damages for land taken for the purposes of the street. The judgment appealed from proceeds upon the ground that the assessment is illegal and void by reason of certain defects in the proceedings, and that the plaintiff's land is not liable to a local assessment for any part of the expense of opening said street. The printed case is quite voluminous. Such of the facts as are necessary to a correct understanding of the legal questions presented by the appeal will be stated in connection with the discussion of those questions. It is to be borne in mind that the action is not a direct proceeding to review the acts of the city authorities. It is addressed to the equitable jurisdiction of the court, and the relief sought is the removal of an apparent lien on the plaintiff's land and a cloud upon his title, growing out of the proceedings referred to. To entitle the plaintiff to the relief sought, it must be made to appear that the proceedings are regular upon their face, but by a defect, disclosed by evidence outside of the record, are rendered irregular and invalid, and also that the defect would not necessarily appear in proceedings to enforce the lien. (*Marsh* v. *The City of Brooklyn*, 59 N. Y., 280; *Guest* v. *The Same*, 69 id., 506.) Regard is also to be had to the familiar principle applicable to all agencies to whom is delegated the sovereign power of taking private property for public use, that all the prescribed conditions to the exercise of the power must be strictly complied with. This rule has been modified, to some extent, in respect to the city of Rochester, by a provision in its charter that all assessments made for improvements in said city shall be valid and effectual, "notwithstanding any irregularity, omission or error in the proceedings relating to the same, and all questions concerning the same shall be determined in all courts

and places liberally to sustain such proceedings, and with reference to the very right of the case, and not strictly." (Sec. 214.) That provision, however, has been judicially declared to apply only to "irregularities, omissions and errors" of a formal nature, not affecting the substantial merits. (*Hassen* v. *The City of Rochester*, 65 N. Y., 516, 520.) Errors of substance, such as the adoption of a vicious rule or principle in making an assessment, or " a clear violation of an express requirement of law prescribing and defining what property was to be assessed, or regulating the amount of the assessment to be imposed," are not touched by the provision. (Id.) Keeping these rules in view, we proceed to consider the principal questions raised by the appeal, some of which are of much importance to the city of Rochester and the owners of real estate therein.

By section 168 of the charter of the city (Laws 1880, chap. 14), the common council are vested with certain powers, subject to the restrictions and limitations therein expressed. One is the power to lay out and open any street in said city whenever the council " shall judge the public good requires the same to be done." (Sub. 3.) The plaintiff's counsel contends that under that provision it is a prerequisite to the exercise of the power to lay out a street, that the council should expressly declare its judgment, by resolution or otherwise, that the proposed street is required by the public good ; and that as no such declaration was made in the present instance, the proceedings are void. The learned referee so held. In that we do not concur. We think that the only effect of the provision referred to, is to leave it to the judgment of the common council to determine when the public good requires action on their part, and that their exercise of the power is, of itself, sufficient evidence, if any is needed, that they regarded such action as called for by the public good.

The case differs essentially from that of *In Matter of the City of Buffalo* (78 N. Y., 362), cited by the respondent's counsel. The charter of Buffalo expressly provided that, before exercising the power to take land for streets, the common council must have declared, by resolution, the intent to take for a street the lands described in the resolution, and that the resolution must have been published as directed in the charter. Here there is no requirement that the judgment of the common council be declared by resolu-

tion, in instituting proceedings to lay out a street. But, whenever that body determines to lay out and open a street, and *that the lands of any person will be necessary* for that purpose, they are required to enter in their minutes a resolution or ordinance declaring such determination, containing a description of the land so deemed necessary, and of the portion of the city which will be benefited by such improvement. That provision was complied with in this instance. Nor is the case analogous, as we conceive, to those cited by the referee in his opinion, relating to the opening of highways in towns. They are *The Town of Gallatin* v. *Loucks* (21 Barb., 578) and *The People ex rel., etc.*, v. *The Commissioners, etc.* (27 id. 94 ; S. C., affirmed., 30 N. Y., 470). The statute under which those cases arose provides that, in towns, no highway shall be laid out through inclosed, improved or cultivated lands, unless certified to be necessary by the oath of twelve reputable freeholders of the town. (1 R. S., 514, § 58.) Those cases hold that the certificate of the twelve freeholders is a prerequisite to the authority of the commissiners to lay out the road ; the certificate of eleven will not suffice, and each of the twelve must have the *legal* title to real estate. But here the judgment which is to precede the action of of the common council is their own, and not that of another body, and, as has been said, the charter does not require that it be expressed in writing or in any other way than by the exercise of the power, which of itself implies that the common council judged the exercise of such power, in the particular instance, to be for the public good.

A declaration of such judgment, prior to taking action in accordance with it, does not appear to be necessary for the protection of the rights of individuals or of the public. If the express declaration of such judgment is a prerequisite in any case, *it is so in every case*, whether the expense of the improvement is to be paid from the city treasury or by local assessment, and such declaration would not protect the constituents of a minority of the common council from the unjust action of the majority, as suggested in the opinion of the referee, because it could not have the effect to charge the treasury with the expense of an improvement ordered to be defrayed by a local assessment. In view of the legislative mandate that all questions concerning assessments made for improvements in said

city shall be determined liberally and with reference to the very right of the case, we are not prepared to say that proceedings taken by the common council, under the charter of the city, to lay out and open a street and levy an asssessment to meet the expense thereof, would be void for want of an express declaration by the council that in their judgment the street was required by the public good, provided such proceedings were regular and sufficient in all other respects.

When the proceedings in question were commenced, the charter provided that no street should be laid out by the common council so as to run across or over the site of any building, at the time actually erected, of the value of five thousand dollars, without having obtained the consent of the owner of such building in writing, or without having purchased such building. (Sec. 169.) By an amendment, which took effect on the first day of January, 1882, the limitation of value was put at "fifty thousand dollars" instead of five thousand. (Laws 1881, chap. 343, § 9.) Church street was laid out over the site of one or more buildings, which appear, by the evidence, to have been of the value, respectively, of five thousand dollars or over, but none of which is shown to have been of the value of fifty thousand dollars. Prior to the first day of January, 1882, the proceedings in question had gone as far as the appointment of commissioners to appraise the damages of the owners of lands proposed to be condemned and taken for the street, and the commissioners had viewed the premises and taken testimony, but had not made their report. Subsequently to that date, the commissioners made and filed their report fixing the amount of damages to which the owners of said lands and buildings were respectively entitled; the report was confirmed by the common council, and the several owners were paid their damages, and they executed deeds of conveyance to the city. The referee has found that the several owners were required by the city to execute such deeds as a condition of payment; that the deeds were not delivered voluntarily, and the owners would not have sold their lots and buildings at the sums received, or delivered such deeds but for the compulsory proceedings instituted by the city to take said lands and buildings.

We do not think the proceedings of the common council are

invalidated by the provisions of section 169. In the first place, there was no actual interference with the possession or rights of the landowners until after the first day of January, 1882, and after that date, their buildings were not of sufficient value to be within the limitation. The provision of the section was for the protection of the land owners. The adoption of the necessary ordinances for the laying out of the street, without taking any step towards making or opening it, or in any manner invading the possession of the owners, was not within the mischief intended to be prevented by the enactment contained in the section. In the absence of threat, or overt act on the part of the city officials, by way of attempt to take possession and open the street, the landowners had no cause of complaint.

In the next place, the subsequent acquisition of title by the city, although the result of proceedings taken to condemn, was a purchase in a mode provided by the charter, and consequently the case is not within the prohibition of the section. The finding that the owners did not convey voluntarily is nothing more than a finding that they acted under the compulsion of valid condemnatory proceedings. If such proceedings were in any respect void as to the owners, the latter were not under compulsion, and their action was in fact voluntary and a waiver of all defects in the proceedings. But whether they acted voluntarily or not, they are not here as complainants. The plaintiff cannot invoke the aid of the provisions of section 169, which are intended as a protection to the land owners only. So far as he is concerned, the case is the same as if each landowner had voluntarily conveyed to the city, without the intervention of legal proceedings to divest him of his title.

The charter provides that whenever, by order of the common council, any new street shall be laid out, opened or worked, it is the duty of the common council to determine what portion, if any, of the expense thereof ought to be paid from the public treasury, and what portion, if any, ought to be paid by local assessment, and to direct that the whole expense, to be paid by a local assessment, be assessed upon all the lots and parcels of land to be benefited thereby in proportion to the benefit which each will derive therefrom. (Sec. 170.) And it is also provided that before the common council shall determine to make any public improvement the expense

whereof is to be defrayed in whole or in part by a local assessment, they shall cause an estimate thereof to be made, and shall, by an entry in their minutes, describe the portion of the city which they deem proper to be assessed for the expense of such improvement. (Sec. 172.)

The plaintiffs counsel contends that these requirements were not complied with, inasmuch as the preliminary and final ordinances for the laying out of the street, which directed that the whole expense thereof be paid by a local assessment, and defined the portion of the city which the common council deemed would be benefited by the improvement, did not direct that the whole expense be assessed upon *all* the lots and parcels of land to be benefited thereby, nor, as the counsel contends, did they express or imply that the portions defined were *all* the portions benefited.

The latter objection is answered by quoting the language of the ordinances.    The first ordinance contains the following : " Resolved, further, that the following *portions* of said city *is* deemed benefited and proper to be assessed for the whole expense thereof, viz. : The entire first ward ; also, all that portion of the second ward bounded on the east by the Genesee river and on the west by Sophia street, and lying south of the south line of Center street."    The second ordinance has the following language : "And the portion of said city which said common council deem will be benefited by said improvement is described as follows (here follows the description above quoted): " On which above described portion of the city the expenses of said improvement are hereby ordered assessed."

In view of the statutory injunction already referred to as to the measure of liberalty with which proceedings of this nature, under the charter, are to be construed, we think it is fairly to be implied, from the language above quoted, that the portion of the city described in the ordinances was deemed by the common council to be the only portion to be benefited by the proposed improvement, and proper to be assessed for the whole expense thereof.    The ordinances, in that respect, follow the language of the charter, and we think they should be regarded as a substantial compliance therewith.

In respect to the objection that the ordinances referred to did not direct that the whole expense be assessed upon *all* the lots and parcels of land to be benefited thereby, it is to be observed that

the charter does not require such direction to be inserted in the ordinance, which determines how the expense shall be paid. As that direction relates exclusively to the distribution of any local assessment that may be ordered, it is enough that it be contained in the ordinance by which the assessment is directed to be made; and that was done in this case. The ordinance of January, 1883, directed the commissioners of assessment " to make an assessment upon *all* the lots and parcels of land and houses within the portion or part of said city so designated," etc.

We also think that the direction in the ordinance, that the whole expense of the improvement be assessed upon the portion of the city described therein, is a sufficient expression of the judgment and determination of the common council that no part of the expense should be borne by the city treasury.

It is contended by the learned counsel for the respondent that the common council erred in not including a larger area, and, in truth, the whole territory of the city, in a public tax, for at least a part of the expense of the improvement. The common council were not imperatively required by the provisions of the charter to assess any portion of the expense upon the whole city, but only in case it was, in their judgment, just so to do. (*The People* v. *The Mayor, etc., of Syracuse*, 63 N. Y., 291); and in determining what portion of the city was so benefited by the improvement as that it should bear the whole expense thereof, they exercised a discretionary power, confided to them by the charter, which cannot be interfered with in this action, unless they went upon a rule wrong in law. (*Kennedy* v. *City of Troy*, 77 N. Y., 493.) Much evidence was introduced before the referee with the view of showing that the premises of the plaintiff were so remote from the projected street, and so situated with reference to it, as that they would not be benefited, but would be lessened in value by the proposed improvement. The testimony consisted almost entirely of speculative opinions as to the effect which the new street would have in diverting travel from the street in front of the plaintiff's building and in lessening the relative value of the plaintiff's premises and others in its immediate vicinity, as compared with cheaper and more remote properties that would be opened up by the new street. Various opinions were expressed by the witnesses. Many thought the new street would

injure the plaintiff's property; others, that it would benefit it. In these circumstances we do not think the action of the common council, in fixing the bounds of the area of benefits, can be annulled by a court of equity. The cases cited by the respondent's counsel do not authorize such a judgment in this case.

In the *People* v. *The Mayor of Syracuse* (*supra*) a very broad discretion was exercised by the commissioners, under a provision similar to the one in hand, yet their action was upheld. In making an assessment for the expenses of opening an alley, they took into consideration the fact that the improvement would remove a large barn building and stable which, as they stated, was in dangerous proximity to a portion of the property assessed. It was held by the Court of Appeals that the advantages resulting from the removal were not so remote and uncertain as that their consideration vitiated the assessment.

In *Guest* v. *The City of Brooklyn* (*supra*), the very forcible remarks of Chief Justice CHURCH, respecting the obnoxious features of the prevailing system of assessments for local improvements, were made, as he declared, to enable him to say more impressively that the effective remedy is not with the judiciary. And the judgment in that case was put upon the ground that a court of equity could not interfere with the action of the municipal officers, whose proceedings were in question, in the exercise of the discretion with which they were vested, although Judge CHURCH remarked that the facts found indicated " extravagance, irregularity and, to some extent, abuses." (P. 515.)

In *Hassan* v. *City of Rochester* (65 N. Y., 516 ; 67 id., 528), a piece of assessable property, within the designated area, was intentionally omitted by the assessors, and thus a rule of law was violated.

In *Le Roy* v. *Mayor* (20 Johns., 429), an assessment for a sewer was imposed upon the owners of a small part only of the houses and lots within the district which would be drained by the sewer. *Held*, that the owners of all such houses and lots should have been assessed, and that the assessment was made upon a wrong principle.

In the *People* v. *The City of Brooklyn* (23 Barb., 166), some of the land assessed for the expense of a sewer was so situated, by reason of an intervening tunnel, that it could have no connection

with the sewer.    It being entirely clear that such land could not be benefited by the sewer, the assessment made thereon was set aside on *certiorari*.    But in that case it was said that when it becomes a question of fact whether a proposed improvement will be advantageous to the property, the decision of the corporate authorities is conclusive.

In *Clark* v. *Village of Dunkirk* (12 Hun, 181; affirmed, 75 N. Y., 612), some of the land assessed for a sewer was lower than the bottom of the sewer, so that it could not be drained into it without a considerable expense and change in the surface of the lots; another portion could not drain into it without crossing the lands of third persons, and certain other portions were assessed at a uniform rate, without regard to their distance from the sewer or the expense of connecting with it.    For these clear violations of sound rules, the assessment was held to be void.    It is obvious that the cases referred to afford no support to the position that a court of equity may relieve land from assessment where, all proceedings being regular, the only question is whether such land is benefited, and that question is in substantial dispute.    In such case the decision of the corporate authorities is conclusive in an action like the one before us.    Whether such decision could be reviewed on *certiorari*, and reversed, upon the ground that it is against the weight of evidence, is a question which is not before us, and upon which we express no opinion.

Section 181 of the charter provides that whenever it shall be necessary the common council may borrow the whole or any portion of the damages for lands necessary for the improvement, upon the note or other obligation of the city.    In the present case, after the amount of such damages had been fixed, the common council caused to be borrowed upon the notes of the city, the sum of one hundred and forty-four thousand eight hundred and nineteen dollars and thirteen cents, and out of it paid such damages.    That was done nearly a year before the assessment roll was confirmed.    The charter provides that the common council may set aside the report of the commissioners appointed to appraise the damages of the land-owners and abandon the improvement at any time before the final confirmation of the assessment-roll.    (Sec. 179.)

The respondent's counsel contends that by such action the common

council elected to pay for the improvement by public tax, and not by local assessments, or if its action did not amount to such election it vitiated any subsequent assessments. We do not think that either of those results followed. The power to borrow conferred by the charter is unlimited as to time, and may be exercised "whenever necessary." It was discretionary with the common council to determine when it was necessary, and the charter does not require them to give notice before making such determination. It was also discretionary with them to abandon the improvement within the time limited, or to decide within that time not to abandon it. When the amount of damages was appraised, they were as able, for aught that appears, to decide whether or not the improvement should be abandoned, as they could have been at any later period. Their action in paying the damages was undoubtedly an election that the improvement should not be abandoned, but we fail to see how those who were liable to be assessed for the expense of the improvement were prejudiced by such action. Their liability was not increased by it, nor did it deprive them of any rights which the charter secured to them. All the subsequent proceedings in respect to the assessment, including the giving of notice to persons interested and an opportunity to be heard, were to be had the same as if the damages had not been paid. The charter does not provide for notice or opportunity to be heard, upon the question whether the work shall be abandoned; the decision of that question appears to rest in the discretion of the common council. As they, of their own motion, and without notice to any one, may judge when an improvement shall be undertaken, so they, in like manner, may determine when proceedings to that end may be abandoned. In short, we do not see that there is anything in the charter to prevent the common council from levying the assessment after the improvement is completed and paid for. We have not overlooked the provisions of sections 213 and 214, providing for the distribution of any excess, and the raising of any deficiency, in the sum realized from the assessments to meet the expenses of the improvement. Under similar provisions applicable to the city of New York, it was once contended that that city could not make an improvement and then lay an assessment of the expense upon the property benefited, for the first time, after the improvement was completed.

But it was held otherwise. (*Wetmore* v. *Campbell*, 2 Sandf., 341 ; *Manice* v. *The Mayor*, 8 N. Y., 120; *Matter of Petition of Roberts*, 81 id., 62.) It is true that among the provisions applicable to that city was one which authorized the corporation, in all cases where they might "deem it necessary for the more speedy execution of the said by-laws and ordinances, or any of them, to cause all such works as may be necessary for any of the purposes aforesaid, or any part thereof, to be executed and done at their own expense, on account of the persons respectively upon whom the same may be assessed." (2 R. L., 446, § 270.) That provision is not in terms contained in the charter of Rochester, but it is provided therein, that whenever the report of the commissioners appointed to appraise damages is finally confirmed the common council may take the lands and premises specified in such report on paying the amount of damages awarded to the owners. (Sec. 180.) This we understand to be an express grant of power to take and pay for the lands needed for the improvement, prior to confirmation of the assessment-roll, quite as ample as that possessed by the city of New York respecting the execution of work. The action of the common council was in accordance with that provision, it not having been taken until after the report was confirmed.

In one respect such early action was obviously for the benefit of the persons assessed, as it enabled the city authorities to sell the buildings standing on the lands purchased in season to apply the avails of the sale in reduction of the sum to be raised by the assessment. The plaintiff's counsel contends that sections 195 and 196 of the charter show that where the payment of the expense of opening a public street is to be defrayed by local assessment, such payment must be deferred until the assessments are confirmed. We do not so read those sections. They limit the time for making such payment to four months after the confirmation of the assessment roll, but do not prohibit payment before confirmation, and they prohibit the city authorities from entering upon the condemned lands until such payment is made, but provide that the city shall not become obligated to take or pay for such lands until confirmation of the assessment-roll, and that is the extent of their provisions.

The direction in section 191, that the assessors shall set down in

the roll the amount of damages, if any, to which any person assessed is entitled by the award of the commissioners does not militate against the views above expressed. The only parties affected by that direction are the assessed owners of lands taken and the city. The former have no cause of complaint if they receive their damages before they are compelled to pay their assessments, and whenever the common council determine, in their discretion, to pay the damages before confirmation of the assessment, such determination is presumed to be in the interest of the city. The provision referred to is to be read in connection with the other provisions of the charter, and it applies when payment is deferred till after the confirmation or making out of the roll.

The plaintiff's counsel makes the point that the addition of the fees of the commissioners of appraisal to the estimate of $125,000 for the opening of the new street, thereby increasing the amount of the assessment beyond the estimate without the consent or waiver of the owners of the lands assessed, avoids the assessment. As we read the charter, the only estimate required before entering upon the work of a public improvement is an estimate of the expense of such improvement, but where the taking of land is necessary, it is not necessary to include the damages and charges therefor in the estimate. (Sec. 172.) If we are right in this, the publication of an estimate of the amount of damages to be paid for the land to be taken was a work of supererogation, and in respect to that item the estimate was not a limitation of the amount. The provision of the charter that no contract shall be let for any improvement at a price greater than the estimate thereof made (sec. 172), refers only to the expense of the work, and does not include damages for land taken. The fact, therefore, that the cost of the land exceeded the estimate does not, as we conceive, affect the validity of the assessment. Nor is its validity affected by the fact that it includes the fees of the commissioners, it being provided by the charter that the assessment shall include the estimated expense of the improvement, the amount of the damages, and all the costs and charges of the city in the proceedings. (Sec. 190.)

Certain questions are raised respecting the action of the commissioners of assessment. The respondent's counsel contends that the assessment does not include all the assessable real estate within

the district designated by the common council; and is, therefore, void. This contention has reference to certain water mains and service pipes owned by the city, and also the mains and pipes of certain gas-light companies, and the poles and wires of certain telegraph, telephone and electric light companies. We doubt whether those properties are intended by the charter to be made liable to local assessment for opening streets. That they are within the general designation of real estate, for certain purposes, is conceded. They are embraced by the term "land," as defined in the statute which describes property liable to taxation. (1 R. S., 387, § 2, as amended, Laws 1881, chap. 293.) But that statute does not relate to local assessments. By the charter, the only property assessable for local improvements is "lots and parcels of land." (Secs. 190, 191, 199, 202, 206, 214.) The term "land" is there used, we apprehend, in its ordinary and popular sense. In one instance the word "lots" is used alone, to express assessable property. (Sec. 207.) Looking at the reason of the thing, it is difficult to say that property of the kind under consideration can be directly benefited by the opening of a street. If the business office of the company owning the subterranean mains, or the poles and wires, is in the vicinity of the proposed street, it may be possible to affirm that such company receives some benefit from the improvement; but the fact supposed does not appear in this case, nor is the contention of the respondent put upon that ground. The decisions in this State, cited by the respondent's counsel upon this point, relate to property liable to general taxation. We think the property referred to is not assessable for local improvements under the terms of the charter.

The respondent's counsel contends that the commissioners erred in assessing the lands belonging to the State, occupied by the Erie canal, lying within the territory designated by the common council, at the nominal sum of one dollar, instead of the actual value of the benefit. It was held in the case of *Hassen*, above cited, on its second appeal (67 N. Y., 528), that under a special provision of the charter of the city of Rochester, lands in said city owned by the State are liable to assessment for local improvements, although exempt from general taxation. The land in that case was a lot having a frontage of several hundred feet on one of the streets of

the city. But the provision of the charter referred to does not extend to the Erie canal or the lands occupied by it, for the reason that, by the Constitution of the State, the legislature is prohibited from selling, leasing or otherwise disposing of the Erie canal (art. 7, sec. 6), and, consequently, that body cannot authorize the imposition of a tax or assessment upon it, which might result in its being sold or leased. If the commissioners erred in respect to the land occupied by the canal, it was in taxing it even a nominal sum; but that is an error of which the plaintiff cannot complain.

But, in another step taken by the commissioners of assessment, they committed what appears to us a serious error. The ordinance directing the assessment described, as we have seen, the territory which the common council deemed benefited by the proposed improvement, and which they adjudged should bear the expense of it. The commissioners, in making their assessment, divided such territory into two districts, one of which they decided would receive a special benefit from such improvement and the other a general benefit. The first district, which included the plaintiff's lot, they assessed by apportioning to each lot a sum per foot front, without reference to the value of the buildings or improvements thereon, gradually lessening the amount as they proceeded from Church street, placing the maximum amount upon the lots abutting on Church street and the minimum at the outer limits of that district. In the other district they made a general assessment by percentages on the lots therein, taking the valuations from the last preceding assessment-roll for general city and county taxes, making changes of values in accordance with their judgment, and placing different percentages upon the lots fronting on various streets, having reference to their location with respect to the improvement. These facts appear by evidence *aliunde*, and are found by the referee. The assessment thus made was confirmed by the common council, and that portion of it which fell upon the plaintiff is, by the judgment under review, declared void. Properly so, we think. The commissioners adopted a wrong principle which neither the charter nor the ordinance permitted. The common council having defined the territory specially benefited, and upon which the whole expense of the improvement should be assessed, the commissioners had no authority to proceed upon the assumption that a portion only of

such territory would derive a special benefit from the improvement, or that different portions of such territory should be assessed according to different rules. The common council, in pursuance of the requirements of the charter (sec. 170), had directed that the assessment should be made upon all the lots in the territory deemed to be benefited, as near as may be, in proportion to the benefit which each should be deemed to receive thereby. That rule should have been applied uniformly to the entire territory. The arbitrary contraction of the area specially benefited, presumptively increased the assessment upon the plaintiff's lot and building included in such area.

In *The People ex rel., etc.*, v. *The County Court of Jefferson County* (55 N. Y., 604), which was a case under certain drainage acts, an assessment which adopted as a rule an apportionment per acre, instead of an apportionment according to benefit, as the acts provided, was set aside as erroneous.

In *Hassan* v. *The City of Rochester* (67 N. Y., *supra*), LOTT, Ch. Com., speaking for the whole commission, said that "their discretion or judgment (the assessors) was confined to the proportion of advantage which each parcel of land within the designated district derived from the improvement." (P. 520.) That case arose under the charter we are now considering.

The appellant's counsel is correct in saying that the mere fact that the commissioners designated one portion of the territory as specially benefited and the other as receiving only a general benefit is immaterial provided their assessment is made upon a right principle. The general rule for determining the amount of benefit is a simple one. It is to ascertain the market value of the property, with the improvement and without it. (*Re Furman Street*, 17 Wend., 649; *Re William and Anthony Streets*, 19 id., 690; *Troy and Boston Railroad Company* v. *Lee*, 13 Barb., 169; *People* v. *Mayor of Syracuse*, 2 Hun, 433, reversed., but on other points, 63 N. Y., 291.) The excess of the value with the improvement, over the value without it, is the amount of the benefit. And in estimating the value of each lot, regard should be had to the buildings and other improvements upon it. The assessment adopted seems to have violated this rule in two particulars. It proceeded upon an essentially different basis of estimate for each of the two districts

into which the territory was divided; and in the district deemed to be specially benefited, it adopted the frontage of the lots as a basis of estimate and disregarded the value of the buildings and other improvements. These errors, we think, vitiated the assessment. No reason appears why the rule above stated as the correct one could not and should not have been applied uniformly, in the present case, to all the lots in the assessable district designated by the common council.

The plaintiff's counsel also contends that the direction in the ordinance for the opening of Church street, that the assesments be payable in installments was void for want of power; that if such direction is valid, the assessment-roll is defective in not following such direction; that the order of the common council referring complaints respecting the assessment to a special committee instead of the committee on assessments was unauthorized; that the certificate of the commissioners of assessment annexed to their roll is defective; that the warrant for the collection of the assessments was inoperative for the reason that it was not signed by the mayor until after it had been delivered to the treasurer for collection, and that no sufficient notice was given of either of the meetings of the common council at which an assessment was ordered. We do not pass upon either of the questions referred to for the reason that if they present defects, such defects are patent upon the face of the proceedings, or if not, the holding of them to be defects, would not affect the final result which we have reached.

The error above pointed out in respect to the proceedings of the commissioners and the assessment made by them does not appear except by extrinsic evidence, and as the assessment is of itself an apparent lien upon the plaintiff's land, and may ripen into other liens by a sale and leases, he is entitled to have it removed.

But as no latent defect is found in the proceedings of the common council prior to ordering the assessment, the plaintiff is not entitled to retain that part of the judgment which declares that his lot is not liable to a local assessment for any part of the improvement. Section 215 of the charter provides that whenever it shall appear, by the judgment of a court of competent jurisdiction, that any assessment for a local improvement is illegal or void for want of jurisdiction in making the improvement or assessment, and said

assessment, or any portion thereof, remains unpaid, the common council may pass an ordinance. designating the improvement so made, the whole expense thereof, and the portion of territory deemed to be benefited thereby, and may assess the houses and lands in such territory described according to the benefit received, and proceed in all respects as in cases of assessments, and such action shall have the same force as if the same had originally been properly done. The judgment in this case should not stand in the way of any action which that provision authorizes the common council to take, by way of remedying any errors into which they may have fallen, or otherwise.

The result is that the judgment appealed from should be reversed, so far as it adjudges the plaintiff's lot not liable to a local assessment for any part of the expense of opening Church street, and restrains and prohibits the city, its officers and agents, from hereafter making any local assessment for any part of the opening of said street which shall include the plaintiff's said lot or be made thereon, and in all other respects the judgment should be affirmed. And as the plaintiff, although unsuccessful in part, succeeds in sustaining, against the defendant's appeal, so much of the judgment as relieves him from the assessment imposed by the city authorities, we think he is entitled to the costs of the appeal.

BARKER, HAIGHT and BRADLEY, JJ., concurred.

Judgment reversed, so far as it adjudges the plaintiff's premises not liable to a local assessment, etc., and restrains the city from hereafter making any local assessment for any part of the opening of Church street which shall include the plaintiff's premises, and in all other respects judgment affirmed, with costs of the appeal to plaintiff.